UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VOXPATH RS, LLC | : | |
| | : | Civil Action No. 2:12-cv-00952-DMC |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LG ELECTRONICS U.S.A., INC., *et al*. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION
TO STRIKE VOXPATH'S INFRINGEMENT CONTENTIONS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

I.      INTRODUCTION .................................................................................1

II.     FACTUAL BACKGROUND ..................................................................2

        A.      The Nature Of The Action ..........................................................2

        B.      VoxPath's Infringement Contentions ...........................................3

        C.      Deficiencies In VoxPath's Infringement Contentions ....................3

                1.      VoxPath Submitted Infringement Charts For  Only
                        A Small Fraction Of The Accused Products ......................3

                2.      VoxPath Failed To Show Required Claim Elements ...........4

        D.      Defendants Identified, And Sought Remediation  Of, The
                Deficiencies In VoxPath's Claim Charts .......................................6

        E.      VoxPath Has Not Remedied The Deficiencies In Its
                Infringement Contentions ...........................................................8

                1.      Sony Defendants .........................................................8

                2.      Toshiba Defendants ....................................................10

                3.      JVC Defendants .........................................................10

                4.      Samsung Defendants ...................................................12

                5.      LG Defendants ..........................................................13

                6.      Onkyo Defendants ......................................................13

                7.      Best Buy and Desay Defendants ....................................14

III.    ARGUMENT .....................................................................................15

        A.      A Patentee's Rule 3.1 Disclosure Must Include
                Element-By-Element Claim Charts For Each Accused
                Product ...................................................................................15

        B.      VoxPath's '530 Patent Claim Charts Should Be Stricken
                Because They Do Not Provide Any Facts For Several
                Claim Elements ........................................................................15

1.      "First And Second Added Signals"...........................................................15

2.      Dependent Claims........................................................................................19

C.   VoxPath Has Failed To Submit Claim Charts  For The Vast
     Majority Of Accused Products................................................................20

IV.   CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
C.A. No. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004) ......................................11

*Connectel, LLC v. Cisco Sys., Inc.*,
391 F. Supp. 2d 526 (E.D. Tex. 2005) ..................................................................16, 18, 20, 21

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
C.A. No. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) ....................................11

*In re Papst Licensing GmbH & Co.*,
767 F. Supp. 2d 1 (D.D.C. 2011) ..........................................................................................11

*Int'l Dev. LLC v. Richmond*,
No. CIV. A. 09-2495, 2011 WL 149859 (D.N.J. Jan. 18, 2011) ...............................15, 18, 20

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed.Cir.1990)...............................................................................................11

*King Pharms. v. Sandoz Inc.*,
No. 2010 WL 2015258 (D.N.J. May 20, 2010) ......................................................................16

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
628 F. Supp. 2d 703 (E.D. Tex. 2008) ...................................................................................18

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) .............................................................................................18

*SanDisk Corp. v. Memorex Prods., Inc.*,
415 F.3d 1278 (Fed. Cir. 2005) .............................................................................................18

*Shared Memory Graphics LLC v. Apple Inc.*,
No. C 10-2475, 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011) ...............................................16

*TFH Publ'ns, Inc. v. Doskocil Mfg. Co.*,
705 F. Supp. 2d 361 (D.N.J. 2010) ...................................................................................15, 16

*ThermaPure, Inc. v. Temp-Air, Inc.*,
No. 10-cv-4724, 2010 U.S. Dist. LEXIS 136262 (N.D. Ill. Dec. 22, 2010)...........................11

**Statutes, Rules & Other Authorities**

Fed. R. Civ. P. 37(b)(2)(B) .....................................................................................................18

Rule 3.1 ......................................................................................................1, 15, 16, 18, 20

## I.   **INTRODUCTION**

Defendants[1] hereby move to strike the infringement contentions served by plaintiff VoxPath RS, LLC ("VoxPath") as insufficient under Local Patent Rule 3.1.

VoxPath's infringement contentions are insufficient for two independent reasons.  First, although VoxPath has accused 513 products, sold by eight defendant groups, of infringing U.S. Patent Nos. 5,450,378 ("the '378 Patent") and 6,304,530 ("the '530 Patent"), it has submitted infringement charts for only a small fraction of those products.   Second, even for the small number of products for which infringement charts were provided, VoxPath has not performed the element-by-element infringement analysis required by this Court's local rules.   *See* L. Pat. R. 3.1(c).   In particular, VoxPath has, for several claim limitations of the '530 Patent, failed to identify *any* features in the accused products that allegedly correspond to those limitations.   More than 22 months after VoxPath first asserted its '530 Patent, VoxPath offers no legitimate excuse for having failed to examine any accused product to determine whether structures corresponding to a key claim limitation — first and second pairs of wiring patterns that lead out output signals to form first and second added signals — are present.

In short, VoxPath has failed to set out its case for infringement for the vast majority of accused products and has failed to put defendants on notice of the nature of the infringement theories against which they will be required to defend.   In these circumstances, VoxPath's noncompliant contentions should be stricken.   More particularly, defendants seek an order (i) striking all of VoxPath's infringement contentions as to the '530 Patent for failure to identify

---

[1] The moving defendants are LG Electronics U.S.A., Inc., LG Electronics, Inc., Desay A&V Science and Technology Co., Ltd., Best Buy Co., Inc., BestBuy.com, LLC, Best Buy Stores, L.P., Best Buy Enterprise Services, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Sony Corporation of America, Sony Computer Entertainment Inc., Sony Computer Entertainment America Inc., Sony Electronics Inc., Sony Corporation, Toshiba America Consumer Products, L.L.C., Toshiba Corporation, Onkyo U.S.A. Corporation, Onkyo Corporation, JVC Americas Corp., and JVC KENWOOD Corporation.

features corresponding to several claim limitations of that patent; and (ii) striking VoxPath's infringement contentions as to both the '530 and '378 Patents for products for which VoxPath has not submitted claim charts.

## II.    FACTUAL BACKGROUND

### A.  The Nature Of The Action

The '378 Patent is entitled "Holographic Elements For an Optical Recording System" (Exh. 1[2]), and the '530 Patent is entitled "Optical Data Reproduction Apparatus" (Exh. 2). VoxPath accuses various optical disc players sold by defendants, including Blu-ray Disc ("BD") players, DVD players and PlayStation3 ("PS3") game consoles, of infringing these patents.

VoxPath brought suit for infringement of the '378 Patent in November 2009.  *VoxPath RS, LLC v. Denon Elecs. (USA), LLC*, C.A. 09-364-TJW (E.D. Tex. Marshall Div.) ("the 09-364 Action").  In May 2010, VoxPath brought a second suit, which included all defendants named in the 09-364 Action, as well as four new defendant groups.  *VoxPath RS, LLC v. LG Electronics U.S.A., Inc.*, C.A. 10-160-TJW (E.D. Tex. Marshall Div.) ("the 10-160 Action").   In the 10-160 Action, VoxPath alleged infringement of the '378 Patent by the new defendants and included claims for alleged infringement of the '530 Patent by all defendants.  The cases were consolidated in September 2010 and the court ordered that future proceedings for both cases take place in the 10-160 Action.  (10-160 Action Dkt.102.)  On January 23, 2012, the Texas court granted the defendants' motion to transfer the 10-160 Action to this district.  (10-160 Action, Dkt.230.)  The transfer was completed on February 16, 2012, and the case was assigned Civil Action No. 2:12-cv-00952 in this Court ("the 12-952 Action" or "the present action").

---

[2] Exh. __ refers to the indicated exhibit attached to the Declaration of Gregory S. Gewirtz submitted in support of this motion.

**B.  VoxPath's Infringement Contentions**

On October 28, 2011, VoxPath served infringement contentions pursuant to the Eastern District of Texas local patent rules, accusing 513 of the moving defendants' optical disc players of infringing 17 claims of the '378 and '530 Patents.  (Exh. 3, VoxPath RS, LLC's Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") at 2-3, Exh. C.) VoxPath asserts claims 1-9, 14 and 15 of the '378 Patent against "each Defendants' optical disc-related products and services . . . that use the holographic optical element described in the asserted claims of the '378 patent."  (*Id.* at 2.)  VoxPath asserts claims 1 and 5-9 of the '530 Patent against "each Defendants' optical disc-related products and services . . . that use the photo detector described in the asserted claims of the '530 patent."  (*Id.* at 3.)  Although the '378 and '530 Patents are directed to different technology, VoxPath asserted that each "Accused Instrumentality" listed in Exhibit C to its Infringement Contentions infringed ***both*** the '378 and '530 Patents, without any explanation of why that would be the case.  (*Id.* Exh. C.)

**C.  Deficiencies In VoxPath's Infringement Contentions**

**1.  VoxPath Submitted Infringement Charts For
Only A Small Fraction Of The Accused Products**

Of the 513 accused products, VoxPath provided infringement charts for the '530 Patent for only 7 of them (*i.e.*, approximately 1.3%), and infringement charts for the '378 Patent for approximately 10% of them by the October 28, 2011 deadline for submitting infringement contentions in the Eastern District of Texas.  (*See* 10-160 Action Dkt.197.)  In some cases, entire classes of products — for example, DVD players — were not charted at all.  In other cases, only one or two products within each class were charted.

VoxPath subsequently produced new infringement charts for 79 accused products, on November 14, 2011, and November 23, 2011, without requesting leave to do so.  Defendants object to these charts, submitted after the infringement contention deadline.  But even if they are considered, VoxPath still has failed to chart the vast majority of accused products.  A complete

description of the products for which infringement charts have still not been submitted is set forth *infra*.

## 2. <u>VoxPath Failed To Show Required Claim Elements</u>

All asserted claims of the '530 Patent require "a pair of first wiring patterns . . . for leading out output signals therefrom to form a first added signal in which the output signals are added." (Exh. 2 cls.1, 5-9.) Those claims also require "a pair of second wiring patterns" that can "form a second added signal." VoxPath's infringement charts for the '530 Patent do not identify any element of any accused product that satisfies either of these claim elements. Rather, VoxPath identifies two wires as a "first wiring pattern" in the accused products, but does not show any feature that receives output signals from those wires and forms an added signal. VoxPath likewise identifies two wires as a "second wiring pattern," but does not show any features in the accused products for forming a "second added signal."

VoxPath's failure to identify features in the accused products that can form the required first and second "added signals" is illustrated by the following diagram from one of VoxPath's '530 Patent claim charts:



(Exh. 4, 10/28/11 '530 Patent claim chart for the Insignia NS-BRDVD3, Sony BDP-S360, Onkyo DV-BD507, and Toshiba BDX2000 KU optical disc players, at 8.)   As can be seen from VoxPath's diagram, VoxPath has identified two wires in blue as a "first wiring pattern," but has not shown any portion of those wires, or any other structure, that adds the output signals of those wires to form the claimed "first added signal."   (*Id.*)   The text in VoxPath's claim chart merely repeats the language of the claims, stating that "[t]he Accused Instrumentality includes a pair of first wiring patterns respectively connected to the first pair of light-receiving cells for leading out output signals therefrom to form a first added signal in which the output signals are added."   (*Id.* at 7-8.)   Nowhere does VoxPath explain what features in the accused product allegedly form the first added signal or where those features can be found.   (*Id.*)   VoxPath likewise identifies a

"second wiring pattern" (in yellow), but fails to identify any structure that forms the required "second added signal." (*Id.* at 9-10.)

For dependent claims 5-9 of the '530 Patent, VoxPath similarly failed to provide facts regarding anything in the accused products that corresponds to the claim elements. Rather, VoxPath simply stated "on information and belief" that the limitations recited in these dependent claims were present in the accused products, using language that merely parroted the claims. One example is reproduced below:

| Excerpt From '530 Patent Claim Chart For Certain Sony Blu-ray Disc Players ||
| Claim | Evidence |
|---|---|
| 5. The optical data reproduction apparatus as set forth in claim 1, | On information and belief, the Accused Instrumentality includes<br><br>an optical data reproduction apparatus |
| wherein the third wiring pattern is at least one of a power supply line, | wherein the third wiring pattern is at least one of a power supply line, |
| a ground line, | a ground line, |
| a line having low impedance, | a line having low impedance, |
| a line through which signal having a different frequency band from the output signals from the light-receiving cells passes, | a line through which signal having a different frequency band from the output signals from the light-receiving cells passes, |
| and a line connected to a light-receiving cell other than the quadrifid light-receiving cells. | and a line connected to a light-receiving cell other than the quadrifid light-receiving cells. |

(*Id.* at 12.) VoxPath made similar disclosures for all other charted products for claims 5-9, simply repeating the elements of the claims and stating that "on information and belief" those elements were present in the accused products.

### D. Defendants Identified, And Sought Remediation Of, The Deficiencies In VoxPath's Claim Charts

Defendants wrote to VoxPath numerous times in October and November 2011 to discuss VoxPath's failure to provide infringement charts for the vast majority of products and failure to show required elements in the '530 Patent claims. (Exh. 5, 11/4/11 Gewirtz e-mail, 11/9/11

Gewirtz e-mail, 11/09/2011 Finkel letter, 11/10/11 Gewirtz e-mail.)  On November 14, 2011, the parties met and conferred and VoxPath "agreed to amend its contentions to clarify its basis for asserting that Defendants' products practice the elements of the '530 patent regarding the first and second added signals."  (*Id.*, 12/5/11 Weiss e-mail.)  But when VoxPath subsequently provided supplemental claim charts for the '530 Patent on November 23, 2011, it added nothing to identify wiring patterns or other features in the accused products that form "first and second added signals."  The new charts merely added the conclusory statement that "it is inherent that the Accused Instrumentalities combine the signals from each of the first pair of light-receiving cells to form a first added signal."  (*E.g.*, Exh. 6, 11/23/11 Sony '530 Patent claim chart, at 11.)  For the second wiring pattern, VoxPath said even less, simply stating that the accused products had a pair of second wiring patterns "to form a second added signal."  (*Id.* at 12.)

Defendants pointed out VoxPath's continuing deficiencies in December 2011 (Exh. 7, 12/2/11 Gewirtz e-mail, 12/2/2011 Finkel letter, 12/6/2011 Finkel letter, 12/27/11 McMahon letter), and on December 8 explained that VoxPath's '530 Patent claim charts failed to show the existence of the elements of the dependent claims (claims 5-9) (*id.*, 12/8/11 Rosenbloom letter).  A further meet and confer was held on December 9, during which the parties again went over the same issues that had been discussed in e-mails and meet-and-confer discussions for weeks, but the parties failed to reach agreement.

Following transfer of this case in January 2012, the parties again met and conferred to prepare for the March 19 teleconference before Magistrate Judge Dickson.  Defendants reiterated their continuing objection to the sufficiency of VoxPath's infringement contentions, and asked if VoxPath would seek to supplement its contentions.  VoxPath said it had no intention of doing so, and would stand by the infringement contentions served in Texas.  This issue was also discussed during the March 19, 2012 teleconference with Magistrate Judge Dickson and, again, VoxPath's

counsel did not dispute that VoxPath would stand by its infringement contentions.  Magistrate Judge Dickson then ordered the briefing schedule for defendants' present motion to strike VoxPath's infringement contentions.

### E.  VoxPath Has Not Remedied The Deficiencies In Its Infringement Contentions

The fact remains that VoxPath, while accusing several hundreds of products of infringement, has submitted claim charts for only a small fraction of those products.  And for the '530 Patent, VoxPath still has not identified any element of the accused products that forms the "first and second added signals," as claimed.  Nor has VoxPath shown the presence of any of the limitations of dependent claims 5-9.

Defendants identify below, on a defendant-by-defendant basis, the products for which claim charts still have not been submitted.

### 1.  Sony Defendants

Of the 107 BD players, DVD players, and PS3 consoles accused of infringing the '530 Patent (*see* Exh. 3, Exh. C, at 2), claim charts are missing for *all* 70 accused DVD players[3], 25 accused Sony BD players[4] and 2 accused PlayStation3 consoles[5].  VoxPath has thus charted

---

[3] Namely, DAVHDX285, DAV-HDX585, DAV-HDX587WC, DAV-HDX589W, DMX-DVD, DVPC650D, DVP-CX860, DVP-CX985V, DVP-CX995V, DVP-FX1, DVP-FX1021, DVPFX701, DVP-FX705, DVP-FX730, DVP-FX810, DVP-FX820, DVP-FX930, DVPFX930/L, DVP-FX930/P, DVP-FX930/R, DVP-FX930/W, DVP-NC555ES, DVPNC600, DVP-NC615/B, DVP-NC665P, DVP-NC800 H/B, DVP-NC85H, DVPNS300/B, DVP-NS300S, DVP-NS315, DVP-NS325B, DVP-NS400D, DVP-NS425P, DVP-NS50P, DVP-NS575P/B, DVp-NS575P/S, DVP-NS57P/S, DVP-NS611HP, DVPNS700H/B, DVP-NS700H/S, DVP-NS700P, DVP-NS70H, DVP-NS710H/B, DVP-NS725P, DVP-NS72HP, DVP-NS775V, DVP-NS90V, DVP-NS975V, DVP-NS999ES, DVP-S330, DVP-S530D, DVP-S550D, DVP-S708H, DVP-S7700, DVP-SR200P, DVPSR200P/B, DVP-SR500, DVP-SR500H, DVP-SS5P, DVX-100, HT-6600DP, HT-7200DH, LBT-LCD7Di, RDR-GX257, RDR-GX315, RDR-GX7, RDR-VX515, RDR-VX560, SLV-D300P and SLV-D350P.

[4] Namely, BDP-BX1, BDPBX2, BDP-BX37, BDP-BX57, BDP-CX7000ES, BDP-CX960, BDP-N460, BDP-S1, BDP-S1000ES, BDP-S185, BDP-S2000ES, BDP-S300, BDP-S301, BDP-S350, BDP-S480, BDP-S500, BDP-S5000ES, BDP-S550, BDPS560, BDP-S580, BDP-S780, BDV-E300, BDV-E500W, BDV-IS1000, BDV-IT1000ES and BDV-T10, BDV-T11.

only 10 of the 107 products accused of infringement, and has not submitted a single '530 Patent claim chart for any accused Sony DVD product.  VoxPath has made no showing that the missing products are the same as, or even reasonably similar to, the few players charted for purposes of an infringement analysis.   And, in fact, Sony's BDP-S185, BDP-5560, BDP-S2000ES, BDP-S5000ES, and BDP-S1 BD players, for example, use different optical pickup units than the BD products for which VoxPath has provided claim charts, and thus *cannot* be treated as "reasonably similar" to the charted products.

With respect to the '378 Patent, of the 107 products accused of infringement, claim charts are missing for 68 accused DVD products[6], 8 accused BD players[7] and 2 accused PS3 consoles.[8] Only 2 Sony DVD players (among 70 accused) and only 1 model PS3 console are included in the charts.  As with the '530 Patent charts, there has been no showing that the missing products are the same as, or even reasonably similar to, the few charted players for purposes of an infringement analysis.  To the contrary, at least 44 of the accused DVD products include different optical pickup units than the 2 charted DVD products.

---

[5] Namely, PS398017 and PS398018.

[6] Namely, DAVHDX285, DAV-HDX585, DAV-HDX587WC, DAV-HDX589W, DMX-DVD, DVPC650D,  DVP-CX860,  DVP-CX985V,  DVP-CX995V,  DVP-FX1,  DVP-FX1021, DVPFX701,  DVP-FX705,  DVP-FX730,  DVP-FX810,  DVP-FX820,  DVP-FX930, DVPFX930/L, DVP-FX930/P, DVP-FX930/R, DVP-FX930/W, DVP-NC555ES, DVPNC600, DVP-NC615/B, DVP-NC665P, DVP-NC800 H/B, DVP-NC85H, DVPNS300/B, DVP-NS300S, DVP-NS315, DVP-NS325B, DVP-NS400D, DVP-NS425P, DVP-NS50P, DVP-NS575P/B, DVp-NS575P/S,   DVP-NS575P/S,   DVP-NS611HP,  DVPNS700H/B,   DVP-NS700H/S, DVP-NS700P, DVP-NS70H, DVP-NS710H/B, DVP-NS725P, DVP-NS72HP, DVP-NS775V, DVP-NS90V,  DVP-NS975V,  DVP-NS999ES,  DVP-S330,  DVP-S530D,  DVP-S550D, DVP-S708H, DVP-S7700, DVPSR200P/B, DVP-SR500, DVP-SS5P, DVX-100, HT-6600DP, HT-7200DH,   LBT-LCD7Di,   RDR-GX257,   RDR-GX315,   RDR-GX7,   RDR-VX515, RDR-VX560, SLV-D300P and SLV-D350P.

[7] Namely, BDPBX2, BDP-S185, BDP-S301, BDPS360, BDP-S480, BDP-S580, BDP-S780 and BDV-T11.

[8] Namely, PS398017 and PS398018.

It appears from VoxPath's infringement contentions that it has not performed even the most rudimentary investigation of Sony's accused products. For example, VoxPath has alleged infringement by products that are *not even capable of playing or recording optical disks*. VoxPath alleges that Sony's HT-SS2300 and HT-SS360 home theater systems infringe all of the claims of the '378 and '530 Patents, even though neither product includes a BD or DVD/CD drive. (*See* HT-SS2300 Operating Instructions (Exh. 8, at 4, 7-9, 19-23), HT-SS360 Operating Instructions (Exh. 9, at 4, 6-8, 17-20).)

### 2. Toshiba Defendants

VoxPath purported to accuse 227 Toshiba model numbers of infringing the '378 and '530 Patents (Exh. 3 Exh. C, at 2-3), but has provided infringement charts for only 11 model numbers for the '378 Patent, 9 model numbers for the '530 Patent. Moreover, while Voxpath's infringement contentions purport to cover DVD Players, Recorders, Portable DVD, TV Combo products, BD Players, HD-DVD Players, and USB DVD drives, no charts were provided for products in the categories of TV Combo products, HD-DVD Players, and USB DVD drives.

Voxpath has made no showing that the more than 200 model numbers that it failed to chart are the same or reasonably similar to any of the charted products. At a minimum, to the extent such omitted products include different optical pickup units than the charted products, such products are different for purposes of any infringement analysis. VoxPath has failed to establish any basis for failing to submit charts for the uncharted products.

### 3. JVC Defendants

Although VoxPath accuses 16 JVC products of infringement[9] (*see* Exh. 3 Exh. C, at 1), VoxPath has provided a claim chart for only one product, the XV-BP1J Blu-ray disc player

---

[9] Namely, DRMV150B, DR-MV150B, DRMV80B, HR-XVC11B, MVR150, SR-DVM700US, SRMV50US, SRMV55US, TH-G31, XV-BP11, XV-BP1J, XV-F85, XV-M50, XV-N370B, XV-N680B, XV-S45.

supplied to JVC by co-defendant LG.[10]   VoxPath has never articulated any credible basis for asserting that the uncharted products are reasonably similar to this single charted product.  To the contrary, there are fundamental dissimilarities between the charted BD player and the remaining uncharted products.  Fourteen of those products are not Blu-ray disc players at all; they are DVD disc players that vary widely as to optical pickup units.  For example, a number of the DVD disc players are supplied to JVC by co-defendant LG and use whatever optical pickup unit LG elects to use (Exh. 7, 12/2/11 Finkel letter); others use licensed Panasonic optical pickup units and are thus released (*id.*); and others differ in that they have no holographic optical element at all, and thus are not relevant to the '378 Patent claims, which require a "a multi-function volume holographic optical element (HOE)" (*id.*).[11]   In fact, one of the uncharted products, the MVR150, is not even a JVC product.[12]   (*Id.* at 2.)

Even as to the single BD player that VoxPath did chart, a product supplied to JVC by co-defendant LG, VoxPath's own chart shows that the product uses a *licensed* photodetector from Pioneer and thus cannot be accused of infringing the '530 Patent.  (Exh. 10, 10/31/11 Finkel e-mail).  Therefore, VoxPath has effectively provided no claim chart as to the '530 Patent.

---

[10] JVC has repeatedly requested that VoxPath drop (or at least stay) its infringement claims against JVC as to products supplied by LG, as these infringement claims can and should be resolved directly between VoxPath and LG.  That would be consistent with well-settled precedent.  *See In re Papst Licensing GmbH & Co.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011) (granting motion to stay customer suit); *ThermaPure, Inc. v. Temp-Air, Inc.*, No. 10-cv-4724, 2010 U.S. Dist. LEXIS 136262 (N.D. Ill. Dec. 22, 2010) (same); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) (same); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, C.A. No. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004) (same); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.Cir.1990) (affirming injunction against patent owner proceeding with suit against customer).  But VoxPath inexplicably has refused to do so.

[11] With respect to the XV-F85 and XV-M50 DVD players, JVC offered to let VoxPath treat them as "reasonably similar" and submit a single claim chart for both products, but VoxPath declined.  (Exh. 7, 12/6/2011 Finkel letter.)

[12] The fifteenth uncharted product, the XV-BP11, is a Blu-ray disc player supplied to JVC by co-defendant LG, and JVC defers to LG as to the issue of dissimilarity.

### 4. **Samsung Defendants**

Of the 48 Samsung BD players, DVD players and home theater systems accused of infringing the '530 Patent (*see* Exh. 3 Exh. C, at 1-2), claim charts are missing for *all* 24 accused DVD players,[13] 7 accused Samsung BD players,[14] and *all* 14 accused home theater systems.[15]  In other words, VoxPath has charted only 3 of the 48 products accused of infringement and has not submitted a single '530 Patent claim chart for any accused Samsung DVD or home theater system product.

VoxPath has made no showing that the missing products are the same as, or even reasonably similar to, the few players charted for purposes of an infringement analysis.  In fact, at least Samsung models DVD-L100 and DVD-VR375A include different optical pickup units than the other products for which VoxPath has provided claim charts, and thus *cannot* be treated as "reasonably similar" to the charted products.

With respect to the '378 Patent, of the 48 products accused of infringement, claim charts are missing for *all* 24 accused DVD products[16], 7 accused BD players,[17] and 10 accused home theater systems.[18]  Thus, VoxPath has charted only 7 of the 48 products accused and, again, has

---

[13]  Namely, DVD-1080P7, DVD-1080P8, DVD-1080P9, DVD-511, DVD-611, DVD-F1080, DVD-H1080, DVD-H1080R, DVD-HD870, DVD-L100, DVD-L75, DVD-L760, DVD-M101, DVD-N2000, DVD-P190, DVD-P191, DVD-P239, DVD-P241, DVD-V4600, DVD-V5500, DVD-V5650, DVD-V9650, DVD-V9800 and DVD-VR375A.

[14]  Namely, BD-D5500, BD-D5700, BD-D6500, BD-D6700, BD-P1500, BD-P2550 and BD-P3600.

[15]  Namely, HT-BD120, HT-BD1250T, HT-BD3252, HT-BD7200, HT-BD8200, HT-TQ85, HT-TZ522T, HT-X710, HT-X715T, HT-X810T, HT-Z320T, HT-Z420T, HT-Z510T, and HT-Z520T.

[16]  Namely, DVD-1080P7, DVD-1080P8, DVD-1080P9, DVD-511, DVD-611, DVD-F1080, DVD-H1080, DVD-H1080R, DVD-HD870, DVD-L100, DVD-L75, DVD-L760, DVD-M101, DVD-N2000, DVD-P190, DVD-P191, DVD-P239, DVD-P241, DVD-V4600, DVD-V5500, DVD-V5650, DVD-V9650, DVD-V9800 and DVD-VR375A.

[17]  Namely, BD-D5500, BD-D5700, BD-D6500, BD-D6700, BD-P1500, BD-P1600 and BD-P2550.

[18]  Namely, HT-BD120, HT-TQ85, HT-TZ522T, HT-X710, HT-X715T, HT-X810T, HT-Z320T, HT-Z420T, HT-Z510T and HT-Z520T.

not submitted a single '378 Patent claim chart for any accused Samsung DVD product.  As with the '530 Patent charts, there has been no showing that the missing products are the same as or even reasonably similar for purposes of an infringement analysis as the few players charted.

### 5.  LG Defendants

VoxPath has accused 45 LG products of infringing the '378 Patent (Exh. 3, Exh. C, at 1), but has provided infringement charts for only 11 of these products.  On December 8, 2011, LG informed VoxPath that many of the remaining 34 accused products are not reasonably similar to any of the charted products.  (Exh. 7, 12/8/11 Rosenbloom letter.)  More specifically, as LG explained to VoxPath, for these uncharted products, the third party that designed the optical pickup unit had no role in designing the optical pickup units used in the charted products.  (*Id.*) Accordingly, VoxPath has no reasonable basis to assert that the optical pickup units of these uncharted products have the same design as the optical pickup unit of a charted product, and VoxPath has not established any basis for failing to submit charts for these uncharted products.

### 6.  Onkyo Defendants

Of the 38 Onkyo BD and DVD players accused of infringing the '530 Patent (*see* Exh. 3 Exh. C, at 1), claim charts are missing for 37 products[19].  In other words, VoxPath has charted only 1 of the 38 products accused of infringement.  VoxPath has made no showing that the missing products are the same as, or even reasonably similar to, the single player charted for purposes of an infringement analysis.

With respect to the '378 Patent, of the 38 products accused of infringement, claim charts are missing for 36 accused products.[20]  Thus, VoxPath has charted only 2 of the products accused.  As with the '530 Patent charts, there has been no showing that the missing products are

---

[19] The only '530 Patent claim chart Voxpath provided is for DV-BD507.
[20] The only '378 Patent claim charts Voxpath has provided are for BD-SP807 and DV-BD606.

the same as or even reasonably similar for purposes of an infringement analysis as the few players charted.

### 7. Best Buy And Desay Defendants

VoxPath has accused 32 Best Buy and Desay products of infringing the '378 and '530 Patents (*see* Exh. 3 Exh. C, at 1),[21] but has provided claim charts under both patents for only 8 products.[22]  For an additional 10 accused products, VoxPath has provided a claim chart under one of the two asserted patents.[23]  For the remaining 14 accused products, VoxPath has failed to submit any claim chart at all, and has failed to provide any valid explanation as to why each uncharted product should be treated the same as, or even reasonably similar to, a charted product for purposes of infringement.[24]

VoxPath has provided no reasonable basis to assert that the optical pickup units of any of the 14 uncharted products have the same design as the optical pickup units of any charted products.  To the contrary, as Best Buy explained to VoxPath (Exh. 7, 12/27/11 Best Buy letter), Best Buy obtains components for its products from numerous suppliers, making it unlikely that an infringement chart for any one product would be representative of all or most other products.  Accordingly, there is no basis for any contention that the uncharted Best Buy and Desay accused products are reasonably similar to any of the charted products.

---

[21] The 32 Best Buy accused products identified by VoxPath are NS-2BRDVD, NS-BDLIVE01, NS-BRDVD3, NS-BRDVD4-CA, NS-BRHTIB, NS-WBRDVD, NS-WBRDVD2-CA, NS-WBRDVD3, NS-1UCDVD, NS-H4005, IS-PD101351, NS-7PDVDA, NS-8PDVDA, NS-PDVD9, NS-SKPDVD, NS-A3111, NS-ES6111, NS-H2002, NS-H2002B, NS-H2002U, NS-LDVD32Q, NS-LTDVD19, NS-MVDS9, NS-P10DVD, NS-P8DVD8, NS-DVD1, NS-UPDVD, NS-FSDVD, NS-D9500, NS-BRDVD, NS-A2111, and NS-D7PDVD.

[22] These 8 products are NS-BRDVD4-CA, NS-H4005, NS-8PDVDA, NS-ES6111, NS-H2002U, NS-P10DVD, NS-P8DVD8, and NS-DVD1.

[23] NS-2BRDVD, NS-BDLIVE01, NS-BRHTIB, NS-WBRDVD, NS-WBRDVD3, NS-PDVD9, NS-SKPDVD, NS-LTDVD19, NS-D9500, and NS-BRDVD

[24] The 14 Best Buy accused products that VoxPath left completely uncharted are NS-BRDVD3, NS-WBRDVD2-CA, NS-1UCDVD, IS-PD101351, NS-7PDVDA, NS-A3111, NS-H2002, NS-H2002B, NS-LDVD32Q, NS-MVDS9, NS-UPDVD, NS-FSDVD, NS-A2111, and NS-D7PDVD.

### III.   ARGUMENT

#### A.  A Patentee's Rule 3.1 Disclosure Must Include
####     Element-By-Element Claim Charts For Each Accused Product

This Court's Patent Rules require the early and complete disclosure of plaintiff's assertions of infringement.  Specifically, L. Pat. R. 3.1 requires Voxpath to identify each claim alleged to be infringed, and each "Accused Instrumentality" alleged to infringe each claim, and to provide "a chart identifying specifically where *each limitation of each asserted claim is found within each Accused Instrumentality*."  L. Pat. R. 3.1(a)-(c) (emphasis added); *Int'l Dev. LLC v. Richmond*, No. CIV. A. 09-2495, 2011 WL 149859, at *2 n.1 (D.N.J. Jan. 18, 2011). Furthermore, plaintiff has the burden to show that, for any product not charted in its infringement contentions, the differences between the uncharted products and those for which it provided charts are "insignificant." *Int'l Development*, 2011 WL 149859, at *2.  These rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *TFH Publ'ns, Inc. v. Doskocil Mfg. Co.,* 705 F. Supp. 2d 361, 364 (D.N.J. 2010) (citation omitted).  VoxPath's infringement contentions do not meet these standards.

#### B.  VoxPath's '530 Patent Claim Charts Should Be Stricken
####     Because They Do Not Provide Any Facts For Several Claim Elements

##### 1.  "First And Second Added Signals"

VoxPath has not identified, for *any* accused product, any structure or feature corresponding to the claim element in the '530 Patent requiring "a pair of first wiring patterns . . . for leading out output signals therefrom to form a first added signal in which the output signals are added," nor any structure or feature that forms the required "second added signal."  VoxPath has had numerous opportunities to provide this information.  Putting aside that VoxPath was required to obtain this information *before* filing suit, VoxPath has no excuse for allowing another two years to go by without providing this information.  Accordingly, VoxPath

should be required to withdraw its infringement contentions on the '530 Patent as to all accused products, and the portion of the present action related to the '530 Patent should be dismissed.

VoxPath initially ignored the requirements in the claims for forming "first and second added signals" entirely. When defendants noted this deficiency, VoxPath agreed to amend, but then did nothing more than state that the accused products "inherently" combine signals to form a first added signal, without any explanation of why that was so, and without any identification of the structures that allegedly accomplish this. VoxPath's conclusory allegation of "inherency" adds nothing. *See Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) (holding, under Eastern District of Texas local patent rules, that "PICs providing vague, conclusory language or simply mimicking the language of the claims when identifying infringement fail to comply with Patent Rule 3-1").[25] Such bare claims of "inherency" could be made about any claim element in any case, and do not satisfy VoxPath's obligation to identify the features of the accused products that correspond to the claim elements.

Nor does VoxPath's claim of inherency, which VoxPath did not even assert with respect to the claimed "second added signal," put defendants on notice of what is alleged to infringe. VoxPath's hope that the structures forming first and second added signals *must* be present cannot substitute for actual evidence that there is any feature in the accused products corresponding to these claim elements. *See Shared Memory Graphics LLC v. Apple Inc.*, No. C 10-2475, 2011 WL 3878388, at *5, *6 (N.D. Cal. Sept. 2, 2011) (rejecting patentee's argument, under analog of this Court's Local Patent Rule 3.1, "that it is reasonable to assume" that claimed data distribution

---

[25] Because this Court's L. Pat. R. 3.1 was developed based on, and is nearly verbatim to, the corresponding local patent rules in the Northern District of California and the Eastern District of Texas, and because Rule 3.1 has not been extensively analyzed in this district, this court has permitted consideration of decisions from those other districts. *TFH Publications*, 705 F. Supp. 2d at 365 n.3; *King Pharms. v. Sandoz Inc.*, No. 2010 WL 2015258, at *4 n.1 (D.N.J. May 20, 2010).

bus was present in accused products, where patentee had not identified particular circuitry corresponding to that bus in its infringement contentions).

VoxPath acknowledges that it has not identified features that form the claimed first and second added signals, but argues that "the structure or firmware performing the functionality is not readily apparent based on publicly available information." (Exh. 6, at 11.)  But VoxPath does not need nonpublic information to determine whether the accused products have structures that can generate first and second added signals.  Even accepting VoxPath's contention that the function of combining the output signals of the first wiring pair "may be performed in a hardware structure or in firmware or software," in any of those instances, VoxPath would be capable of pointing to some structure that combines the output signals in a manner that could generate a first added signal.

If, for example, the two wires of the first wiring pattern connect at an adder circuit or other circuitry to combine output signals of those wires, such structure would be visible from an inspection of the deconstructed product.  If firmware accomplishes the combination of the output signals, the two wires of the first wiring pattern would be inputs to a chip or some other physical structure that holds the firmware.  And, if software accomplishes the combining function, the two wires of the first wiring pattern would be inputs to a chip or other physical structure that uses software to combine the output signals, and VoxPath could identify that chip or other physical structure, as well as the inputs into it.  In short, there must be two inputs — one corresponding to each output signal in the first wiring pattern — to some physical structure that performs the claimed function of combining signals to create a "first added signal."  Publicly available information; namely, the deconstructed product itself, would reveal any such structure.  The same is true for the "second added signal" limitation.

VoxPath's contention that the present action is akin to a software case in which it needs discovery before it can prove infringement is incorrect.  Even if software were one way to combine the respective outputs of the first and second wiring patterns, as explained above, those outputs must be inputs to some physical structure that runs software to perform the combining function, and any such structure in the accused products would be readily visible in the products themselves, *i.e.*, from public information.

Under the clear language of this Court's Local Patent Rules, as confirmed by the case law, a patentee's infringement charts must demonstrate the existence of ***each*** claimed element in the Accused Instrumentalities.  L. Pat. R. 3.1(c); *Int'l Development*, 2011 WL 149859, at *2 n.1; *see also Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 714 (E.D. Tex. 2008).  Here, VoxPath's charts do not identify a single "structure, process, algorithm, feature or function" in any accused product that satisfies the claim limitations directed to "first and second added signals."  *See Connectel*, 391 F. Supp. 2d at 528; *Linex*, 628 F. Supp. 2d at 711.  Thus, VoxPath has made no case for infringement, has not put defendants on notice of its theory of infringement, and only seeks to subject defendants to expensive and time-consuming discovery for products as to which there is no reasonable basis for any allegation of infringement.  In these circumstances, VoxPath's charts should be stricken.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006) (affirming district court's denial of leave to amend infringement contentions and rejection of supplemental expert reports to add untimely new infringement theories); *SanDisk Corp. v. Memorex Prods., Inc*., 415 F.3d 1278, 1292 (Fed. Cir. 2005) (affirming exclusion of evidence pertaining to theories of claim construction and infringement not disclosed according to the court's scheduling order); *see also* Fed. R. Civ. P. 37(b)(2)(B) (permitting district court to strike a claim, refuse to allow a disobedient party to support a designated claim or prohibiting that party from introducing

designated matters into evidence as a sanction for "fail[ing] to obey an order to provide or permit

discovery").

### 2. Dependent Claims

VoxPath also has failed to identify any structure or feature in any of the accused products

that corresponds to the limitations of dependent claims 5-9 of the '530 Patent.  Those dependent

claims recite as follows:

5. The optical data reproduction apparatus as set forth in claim 1, wherein the third wiring pattern is at least one of a power supply line, a ground line, a line having low impedance, a line through which signal having a different frequency band from the output signals from the light-receiving cells passes, and a line connected to a light-receiving cell other than the quadrifid light-receiving cells.

6. The optical data reproduction apparatus as set forth in claim 5, further comprising a comparator for comparing phases of a first added signal and a second added signal to form a tracking error signal;

wherein the first added signal is formed by adding the output signals from the first pair of light-receiving cells, and the second added signal is formed by adding the output signals from the second pair of light receiving cells.

7. The optical data reproduction apparatus as set forth in claim 6, wherein the light receiving element is disposed in an optical pickup device and the comparator is disposed in a control board of the optical data reproduction apparatus; and

wherein the light-receiving element and the control board are connected by a flexible circuit board.

8. The optical data reproduction apparatus as set forth in claim 7, wherein the light-receiving element includes connector terminals through which the respective light-receiving cells and the flexible circuit board are electrically connected;

wherein the connector terminals includes a pair of first terminals respectively connected to the first wiring patterns, a pair of second terminals respectively connected to the second wiring patterns, and a third terminal through which a signal having a different nature from those of the output signals from the light-receiving cells passes.

9. The optical data reproduction apparatus as set forth in claim 7, wherein the optical pickup device includes connector terminals through which the respective light-receiving cells and the flexible circuit board are electrically connected;

wherein the connector terminals includes a pair of first terminals respectively connected to the first wiring patterns, a pair of second terminals respectively connected to the second wiring patterns, and a third terminal through which a signal for preventing from occurring crosstalks when the tracking error signal is formed.

With respect to each of these dependent claims, VoxPath did nothing more than state "on

information and belief" that the limitations recited in the claims are present in the accused

products.  Merely parroting the language of the claims does not satisfy the patentee's obligations

under L. Pat. R. 3.1. *See Connectel*, 391 F. Supp. 2d at 527-28 (emphasis supplied) (compliance with Patent Rule 3-1 "demands PICs that set forth 'particular theories of infringement with sufficient specificity to provide defendants with notice of infringement *beyond that which is provided by the mere language of the patent [claims] themselves*'"). Again, the features set forth in dependent claims 5-9 are features that, if present in an accused product, would be readily apparent from an inspection. For example, claim 7 requires that a light-receiving element and a control board are "connected by a flexible circuit board." Although the presence of any such "flexible circuit board" would be apparent from a basic engineering study of the products, VoxPath made no effort to locate this element in any of the accused products or notify defendants of VoxPath's theory as to how this claim element could be satisfied by the accused products. Accordingly, VoxPath's charts with respect to the dependent claims of the '530 Patent should be stricken.

### C. VoxPath Has Failed To Submit Claim Charts For The Vast Majority Of Accused Products

In addition to providing inadequate charts for the '530 Patent, VoxPath failed to submit infringement charts at all, for either patent, for the vast majority of accused products. While accusing more than 500 products of infringement, VoxPath has failed to submit '530 Patent infringement charts for approximately 450 products and failed to submit '378 Patent infringement charts for approximately 425 products. The local patent rules are clear, however, that a patentee must provide "a chart identifying specifically where each limitation of each asserted claim is found *within each Accused Instrumentality*" L. Pat. R. 3.1(a)-(c) (emphasis supplied); *Int'l Development*, 2011 WL 149859, at *2 n.1. For any accused product identified in Exhibit C of VoxPath's Infringement Contentions for which no claim chart was provided, VoxPath's infringement contention should be stricken.

VoxPath appears to take the position that the small number of products for which it submitted claim charts are "representative" of the remaining accused products (*see, e.g.*, Exh. 5, 11/10/11 Weiss letter 1-2), but has not made any factual showing that the uncharted products are the same, for purposes of an infringement analysis, as those that were charted, or even that the uncharted products operate in a "reasonably similar" manner.  VoxPath asserts only that all of the accused products are optical disc players that allegedly contain volume holographic optical elements and photo detectors, and that based on VoxPath's review of fewer than 100 products of the more than 500 accused, it believes that all of the remaining accused products must operate in a "similar manner."  (*Id.*)  But VoxPath offers no evidence that this is the case.

In fact, VoxPath has failed to take into account significant differences that exist among the accused products.  As explained above, many of the uncharted products are in different product classes than the charted ones, and many use different optical pickup units than the charted products, as well as different chipsets.  For example, whereas VoxPath provided claim charts for a relatively small number of Sony, JVC, Samsung, and Onkyo BD players, it submitted virtually no charts for the accused DVD players sold by those defendants, which are in different product classes and not reasonably similar.  Likewise, many of the uncharted optical disc players use different optical pickup units than the charted products, and in some cases, these optical pickup units were designed by completely different companies.  In short, VoxPath has made no showing that any of the charted products are proper "exemplars" for the uncharted products accused of infringement.

Although VoxPath claims to have expended significant resources investigating the basis for infringement, the objective facts show that VoxPath's diligence, for a suit of this breadth, was woefully inadequate.  *See Connectel*, 391 F. Supp. 2d at 528 ("Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with

great detail their theories of infringement.").  VoxPath chose to sue many different defendant groups and allege infringement by hundreds of products, presumably to seek substantial damages, without investigating the operation of the vast majority of those products.  Indeed, VoxPath admits that it did not even purchase more than 400 of the 513 accused products, much less analyze them.  (Exh. 5, 11/10/11 Weiss letter at 1-2.)

For the products that VoxPath *did* analyze, VoxPath failed to obtain information that any competent engineering study would have revealed, including the presence of circuitry corresponding to "first and second added signals" and to the "flexible circuit board" of claim 7 of the '530 Patent — if such features were indeed present in the accused products.  In short, VoxPath has not come close to conducting an appropriate level of diligence for a case of this magnitude so as to justify subjecting defendants to the tremendous burden of expensive and time-consuming discovery on products for which VoxPath has failed to articulate any theory of infringement.

## IV.   CONCLUSION

For the foregoing reasons, defendants seek an order striking all of VoxPath's infringement contentions for the '530 Patent, and striking VoxPath's infringement contentions under either patent for any product for which VoxPath has not provided an infringement chart.

Respectfully submitted,

Dated:  March 30, 2012

By: /s/ Gregory S. Gewirtz
Gregory S. Gewirtz
Andrew T. Zidel
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ  07090
Tel:  908.654.5000; Fax:  908.654.7866
E-mail:  ggewirtz@ldlkm.com; azidel@ldlkm.com
        litigation@ldlkm.com
*Attorneys for Defendants Sony Corporation*
*of America, Sony Computer Entertainment*
*America LLC, and Sony Electronics Inc.,*
*Sony Corporation and Sony Computer*
*Entertainment Inc.*

By: /s/ Emmett J. McMahon

Emmett J. McMahon  (*pro hac vice*)
Nicole E. Kopinski     (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI,
L.L.P.
800 LaSalle Avenue
Suite 2800
Minneapolis, MN  55402
Telephone:     (612) 349-8500
Facsimile:      (612) 339-4181
ejmcmahon@rkmc.com
nekopinski@rkmc.com

Hillel I. Parness (HP-1638)
ROBINS, KAPLAN, MILLER & CIRESI,
L.L.P.
601 Lexington Avenue
Suite 3400
New York, NY  10022
Telephone:     (212) 980-7400
Facsimile:      (212) 980-7499
hiparness@rkmc.com

*Attorneys for Defendants Best Buy Co., Inc.,*
*BestBuy.com, LLC, Best Buy Stores, L.P.*
*and Best Buy Enterprise Services, Inc.*

By: /s/ Todd. R. Tucker

Todd. R. Tucker
Nicholas J. Gingo
Renner, Otto, Boisselle & Sklar, LLP
1621 Euclid Ave., 19th Floor
Cleveland, OH 44115
(216) 621-1113
E-mail:ttucker@rennerotto.com
          ngingo@rennerotto.com

*Attorneys for Onkyo U.S.A. Corporation*
*and Onkyo Corporation*

By: /s/*Gregory D. Miller*

Gregory D. Miller
Sarah Christine Hodge
Podvey, Meanor, Catenacci, Hildner,
Cocoziello & Chattman PC
The Legal Center

One Riverfront Plaza
Newark, NJ 07102-5497
(973) 623-1000
E-mail:gmiller@podvey.com
      shodge@podvey.com

Richard A. Edlin
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
E-mail:edlinr@gtlaw.com

Richard D. Harris (*pro hac vice*)
Howard E. Silverman (*pro hac vice*)
James J. Lukas, Jr. (*pro hac vice*)
Eric J. Maiers (*pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
(312) 456-8435 (*facsimile*)
E-mail:harrisr@gtlaw.com
      silvermanh@gtlaw.com
      lukasj@gtlaw.com
      maierse@gtlaw.com

*Attorneys for Defendants*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

By: /s/*Ronald Yin*
    Ronald Yin
    Aaron Wainscoat
    DLA PIPER LLP (US)
    2000 University Avenue
    East Palo Alto, California 94303
    Tel. (650) 833-2000
    Fax (650) 833-2001
    E-mail:ronald.yin@dlapiper.com
        aaron.wainscoat@dlapiper.com

*Attorneys for Defendants*
*Toshiba Corporation and Toshiba America*
*Consumer Products, LLC*

By: /s/Steven Lieberman
      Steven Lieberman
      Brian Rosenbloom
      Joo Mee Kim
      ROTHWELL, FIGG, ERNST &
      MANBECK, PC
      1425 K St., N.W., Suite 800
      Washington, D.C. 20005
      Telephone No. (202) 783-6040
      Facsimile No. (202) 783-6031
      E-mail:slieberman@rfem.com
           brosenbloom@rfem.com
           jkim@rfem.com

      *Attorneys for Defendants*
      *LG Electronics U.S.A., Inc. and*
      *LG Electronics, Inc.*

By: /s/Evan Finkel
      Evan Finkel
      Mark Kendrick
      Michael Horikawa
      Pillsbury Winthrop Shaw
       Pittman LLP – Los Angeles
      725 S Figueroa Street, Suite 2800
      Los Angeles, CA 90017-5406
      Telephone No. (213) 488-7307
      Facsimile No. (213) 226-4058
      Email: evan.finkel@pillsburylaw.com
           mark.kendrick@pillsburylaw.com
           michael.horikawa@pillsburylaw.com

      John A. Fedun
      Pillsbury Winthrop Shaw
       Pittman LLP — New York
      1540 Broadway
      New York, NY  10036-4039
      Telephone No. (212) 858-1923
      Facsimile No. (212) 858-1500
      Email: john.fedun@pillsburylaw.com

      *Attorneys for Defendants*
      *JVC Americas Corp. and*
      *JVC KENWOOD Corporation*

By: /s/Nicholas Stevens

Nicholas Stevens
STARR, GERN, DAVISON & RUBIN, PC
105 Eisenhower Parkway
Roseland, NJ 07068-1050
Email: nstevens@starrgern.com
Phone:  (973) 403-9200

Tim Tingkang Xia
Georgia Bar No. 779609
E-Mail: ttx@mmmlaw.com
John P. Fry
Georgia Bar No. 278705
E-Mail: jfry@mmmlaw.com
Kelly L. Whitehart
Georgia Bar No. 755447
E-Mail: klw@mmmlaw.com
MORRIS MANNING & MARTIN LLP
3433 Peachtree Road, N.E.
Atlanta, Georgia  30326
Phone:  (404) 233-7000
Fax:  (404) 365-9523

*Attorneys for Defendant Desay A&V Science and Technology Co. Ltd.*