**LITE DEPALMA GREENBERG, LLC**
Michael E. Patunas
Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 623-3000
mpatunas@litedepalma.com
matarantino@litedepalma.com

*Attorneys for Plaintiff VoxPath RS, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VOXPATH RS, LLC, | : | |
| Plaintiff, | : | Civil Action No. 12-952 (DMC)(JAD) |
| v. | : | |
| LG ELECTRONICS U.S.A., INC.; LG | : | |
| ELECTRONICS INC.; DENON ELECTRONICS | : | |
| (USA), LLC; D&M HOLDINGS, INC.; DESAY A&V | : | **PLAINTIFF VOXPATH RS, LLC'S** |
| SCIENCE AND TECHNOLOGY CO. LTD.; BEST | : | **OPPOSITION TO DEFENDANTS'** |
| BUY CO., INC.; BESTBUY.COM, LLC; BEST BUY | : | **MOTION TO STRIKE VOXPATH'S** |
| STORES, L.P.; BEST BUY ENTERPRISE | : | **INFRINGEMENT CONTENTIONS** |
| SERVICES, INC.; PANASONIC CORPORATION OF | : | |
| NORTH AMERICA; PANASONIC CONSUMER | : | |
| ELECTRONICS COMPANY; PANASONIC | : | |
| CORPORATION; SAMSUNG ELECTRONICS | : | |
| AMERICA, INC.; SAMSUNG ELECTRONICS CO.; | : | |
| SONY CORPORATION OF AMERICA; SONY | : | |
| COMPUTER ENTERTAINMENT INC.; SONY | : | |
| COMPUTER ENTERTAINMENT AMERICA INC.; | : | |
| SONY ELECTRONICS INC.; SONY | : | |
| CORPORATION; TOSHIBA AMERICA, INC.; | : | |
| TOSHIBA AMERICA CONSUMER PRODUCTS, | : | |
| L.L.C.; TOSHIBA CORPORATION; ONKYO U.S.A. | : | |
| CORPORATION; ONKYO CORPORATION; | : | |
| PIONEER ELECTRONICS (USA) INC.; PIONEER | : | |
| CORPORATION; HEWLETT-PACKARD | : | |
| COMPANY; JVC AMERICA, INC.; JVC AMERICAS | : | |
| CORP.; JVC COMPANY OF AMERICA; JVC | : | |
| KENWOOD HOLDINGS, INC.; VICTOR COMPANY | : | |
| OF JAPAN, LIMITED; JVC OPTICAL | : | |
| COMPONENTS (THAILAND) CO., LTD.; YAMAHA | : | |
| CORPORATION; YAMAHA CORPORATION OF | : | |
| AMERICA; and YAMAHA ELECTRONICS | : | |
| CORPORATION, | : | |
| Defendants. | : | |
| | : | |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION. ..................................................................................................1

II.   FACTUAL BACKGROUND. ..............................................................................2

III.   ARGUMENT...........................................................................................................6

    A.   VoxPath Has Disclosed The Accused Structures Containing The First And
        Second Wiring Patterns.........................................................................................7

        1.   VoxPath's Infringement Contentions Disclose Where The
            Infringement Is Occurring In The Accused Instrumentalities As
            Required By The Local Rules.................................................................7

        2.   Defendants' Arguments Fail Because Neither The Claims Nor The
            Applicable Rules Require VoxPath To Point To A "Structure Or
            Feature" That Forms Added Signals. ......................................................10

    B.   VoxPath's Infringement Contentions For Claims 5-9 Of The '530 Patent Are
        Sufficient And Comply With The Applicable Rules. ..........................................13

    C.   VoxPath's Representative Infringement Contentions Sufficiently Disclose
        VoxPath's Theory Of Infringement For Both The '378 And '530 Patent
        And, In Light Of The Similarities Of The Accused Products, VoxPath's
        Representative Contentions Are Sufficient.........................................................14

    D.   If The Court Finds That Defendants' Motion Has Merit, VoxPath Should Be
        Given The Opportunity To Amend Its Infringement Contentions To
        Correct The Deficiencies Identified By The Court..............................................17

IV.   CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Antonious v. Spalding & Evenflo Cos.*,
275 F.3d 1066 (Fed. Cir. 2002) ........................................................................... 15

*Connectel, LLC v. Cisco Sys., Inc.*,
391 F. Supp. 2d 526 (E.D. Tex. 2005) .......................................................... 12, 17

*FusionArc, Inc. v. Solidus Networks, Inc.*,
C.A. No. C 06-06760, 2007 U.S. Dist. LEXIS 28970 (N.D. Cal. Apr. 5, 2007) .............. 11, 17

*Honeywell Int'l, Inc. v. Acer America Corp.*,
655 F. Supp 2d 650 (E.D. Tex. 2009) ........................................................... 14, 15

*Implicit Networks, Inc. v. Hewlett-Packard Co.*,
Civil Case No. 10-03746 SI, 2011 U.S. Dist. LEXIS 100283 (N.D. Cal. Sept. 7, 2011) ... 15, 16

*Int'l Development LLC v. Richmond*,
C.A. No. 09-2495, 2011 U.S. Dist. LEXIS 4453 (D.N.J Jan. 17, 2011) .......................... 12, 17

*Juxtacomm Techs., Inc. v. Ascential Software Corp.*,
548 F. Supp 2d. 379 (E.D. Tex. 2008) ................................................................ 14

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
628 F. Supp. 2d 703 (E.D. Tex. 2008) ........................................................... 11, 12

*Network Caching Technology, LLC v. Novell, Inc.*,
C.A. No. C-01-2079, 2003 U.S. Dist. LEXIS 9881 (N.D. Cal. Mar. 21, 2003) ................. 9, 11

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) ........................................................................ 13

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
Civil Case No. 44138, 2005 U.S. Dist. LEXIS 44138 (N.D. Cal. Aug. 18, 2005) ................ 15

*SanDisk Corp. v. Memorex Prods., Inc.*,
415 F.3d 1278 (Fed. Cir. 2005) ........................................................................ 13

*Shared Memory Graphics LLC v. Apple Inc.*,
No. C 10-2475, 2011 U.S. Dist. LEXIS 99166 (N.D. Cal. Sept. 2, 2011) ........................ 12

*STMicroelectronics, Inc. v. Motorola, Inc.*,
308 F. Supp. 2d 754 (E.D. Tex. 2004) ........................................................ 9, 10, 11

*Whipstock Servs. v. Schlumberger Oilfield Servs.*,
C.A. No. 6:09-cv-113, 2010 U.S. Dist. LEXIS 1395 (E.D. Tex. Jan. 8, 2010) ................. 9, 11

# TABLE OF AUTHORITIES

**PAGE**

**Rules**

L. Pat. R. 3.1 (D.N.J.) .................................................................................................. 7, 8, 9

L. Pat. R. 3.7 (D.N.J.) ......................................................................................................... 3

L. Pat. R. 3-1 (E.D. Tex.) .................................................................................................... 7

L.Civ.R. 37.1 (D.N.J.) ....................................................................................................... 13

## I.      INTRODUCTION.

VoxPath RS, LLC ("VoxPath") takes its obligations to provide infringement contentions very seriously.  Although VoxPath is a small company with limited resources, VoxPath spent over $125,000 to prepare its infringement contentions.  VoxPath purchased more than 80 of Defendants' products and commissioned expert consultants to disassemble, reverse engineer and study each of the products.   VoxPath incorporated the information it learned into the infringement contentions served by VoxPath on Defendants.   VoxPath's infringement contentions include over 100 representative charts showing specifically where Defendants' products infringe U.S. Patent Nos. 5,450,378 (the "'378 patent") and 6,304,530 (the "'530 patent").  Consistent with its obligations under the applicable local patent rules, VoxPath's infringement contentions demonstrate exactly where the infringement is occurring in the Accused Instrumentalities.

As Defendants' Motion acknowledges, VoxPath's infringement contentions disclose that VoxPath asserts that particular aspects of the optical pickup units used in each of Defendants' Accused Instrumentalities infringe the '378 and '530 patents.  As a result, VoxPath's infringement contentions satisfy the purpose of infringement contentions at this early stage of the litigation:  to ensure that VoxPath's infringement theories are known and to focus discovery as much as possible.  As illustrated by VoxPath's infringement contentions, discovery in this case will be limited to just the relevant portions of the optical pickup unit in the Defendants' Accused Instrumentalities:  the holographic optical elements and the quadrifid photodetectors and wiring patterns.

Although VoxPath's infringement contentions comply with the applicable local patent rules in both this District and the Eastern District of Texas, whose rules governed when the contentions were served, Defendants argue that VoxPath's infringement contentions are

insufficient.   First, Defendants argue that VoxPath must identify a "structure or feature" corresponding to the added signal portion of claim 1 of the '530 patent.  Setting aside that the claim language does not require a "structure or feature" for this portion of claim 1, VoxPath's investigation and consultation with its expert consultants has shown that the added signal portion of claim 1 is inherent based on the information reasonably and publicly available to VoxPath. Given the complexity of an optical pickup unit and the microscopic size of the relevant features, VoxPath cannot reasonably provide additional information without discovery.  And, importantly, VoxPath's contentions with respect to claim 1 sufficiently disclose VoxPath's infringement theories and focus discovery.  Second, Defendants argue that VoxPath must provide additional information for its infringement contentions for claims 5-9 of the '530 patent.  Similar to Defendants' first argument, Defendants' second argument fails because VoxPath's infringement contentions provide the information reasonably available to VoxPath and sufficiently focus discovery to comply with the local patent rules.  Finally, Defendants argue that VoxPath's representative infringement contention charts are insufficient.  Defendants, however, provide only assertions, without facts, to support their argument.  VoxPath's infringement theory is consistent across the more than 80 Accused Instrumentalities studied by VoxPath and Defendants have provided no basis to believe VoxPath's infringement contention charts are not representative.

Accordingly, Defendants' Motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND.

In both its pre-filing and post-filing investigation in preparation for its infringement contentions, VoxPath spent significant resources purchasing, reverse engineering and studying Defendants' products.  Declaration Of John Fleming In Support Of Plaintiff VoxPath RS, LLC's Opposition To Defendants' Motion To Strike VoxPath's Infringement Contentions at ¶¶ 2-4.

VoxPath's efforts included purchasing over 80 infringing devices sold by Defendants, commissioning experts to disassemble each device, commissioning experts to locate and study each holographic optical element used by each infringing device and commissioning experts to, using a special microscope, study the photodetectors and related wiring patterns used by each infringing device.  *Id.*   The results of VoxPath's extensive investigation into Defendants' infringement is reflected in the 86 infringement contention charts for the '378 patent and 21 infringement contention charts for the '530 patent.[1]   VoxPath's infringement charts include products from each of the Defendants as well as each of the "product classes" identified by Defendants:  blu-ray disc players (*e.g.*, Weiss Decl.[2] Exs. A, B), DVD disc players (*e.g.*, Weiss Decl. Exs. C, D) and Sony's Playstation 3 game machine (Weiss Decl. Ex. E).[3]

Despite the breadth of VoxPath's infringement charts, on November 4, 2011, Defendants requested to meet and confer regarding the infringement contentions because Defendants believed VoxPath contentions were "superficial" and should have included a chart for each of the Accused Instrumentalities.  Weiss Decl. Ex. I.  Defendants indicated from the outset that they intended to file a motion regarding their objections.  Weiss Decl. Ex. J.  Prior to meeting and conferring, VoxPath requested that each defendant detail all of their concerns to make the meet and confer as fruitful as possible; Defendants, as a group, refused.  Weiss Decl. Exs. K, L.

---

[1] Defendants indicate that they object to the charts provided by VoxPath on November 14, 2011 and November 23, 2011.  The November 14, 2011 charts were simply service of charts for the '378 patent that were inadvertently not served with the original infringement contentions.  The November 23, 2011 charts were the supplemental charts that VoxPath served in an attempt to address Defendants' concerns.  Defendants have suffered no prejudice and have no basis to object to these charts.  If the Court feels it is necessary, VoxPath will file a motion for permission to supplement its charts pursuant to L. Pat. R. 3.7.

[2] "Weiss Decl." refers to the Declaration of Andrew D. Weiss in support of this brief, submitted concurrently with this brief.

[3] A full copy of VoxPath's infringement contentions contain 107 claim charts and are voluminous.  To avoid unnecessarily burdening this Court with voluminous paper, VoxPath has attached representative charts to this brief. Weiss Decl. Exs. A, C, E, F, G (charts for the '378 patent); Exs. B, D, H (charts for the '530 patent).  VoxPath would be happy to provide a full copy of VoxPath's infringement contentions if the Court prefers.

(Defendants also indicated that they were "not sympathetic" to the time and expense VoxPath incurred in preparing its infringement contentions).

Although Defendants refused to provide a detailed recitation of their concerns, in an attempt to avoid the unnecessary motion practice Defendants were insisting on, VoxPath agreed to meet and confer with Defendants.  Weiss Decl. Ex. M.  During the meet and confer on November 14, 2011, the parties discussed the concerns raised by Defendants regarding claim 1 of the '530 patent as well as Defendants' objection to the use of representative infringement contention charts.  Weiss Decl. at ¶ 5.  VoxPath also informed Defendants that some of the charts for the '378 patent had inadvertently not been served.  *Id.*  VoxPath immediately served the inadvertently omitted charts.  Weiss Decl. Ex. N.   In an effort to resolve the dispute, although VoxPath believed its original charts were sufficient, VoxPath agreed to supplement its charts for claim 1 of the '530 patent by November 23, 2011 in an attempt to address Defendants' stated concern regarding the "added signal" portion of claim 1 of the '530 patent.  Weiss Decl. at ¶ 3.  As promised, VoxPath served its supplemental charts on November 23, 2011.  Weiss Decl. Ex. O.

On December 2, 2011, Defendants again raised concerns with VoxPath's charts for claim 1 of the '530 patent because VoxPath did not identify a "structure of wiring patterns that allegedly result in the first and second added signals."  Weiss Decl. Ex. P.  Although Defendants requested a further meet and confer, Defendants continued to refuse to provide any factual basis for their positions.  Weiss Decl. Ex. Q (summarizing the known basis for Defendants' positions prior to the December 9, 2011 meet and confer).  During the resulting December 9, 2011 meet and confer, the parties agreed that they had telephonically met and conferred to an impasse regarding Defendants' concerns with respect to claim 1 of the '530 patent and the charting of each Accused Instrumentality.  Weiss Decl. at ¶ 5.

The Defendants did not raise any issue with respect to claims 5-9 of the '530 patent until the LG defendants, on behalf of themselves, raised the issue on December 8, 2011, the day before the final meet and confer between the parties.  Weiss Decl. Ex. R.  It was not until during the meet and confer that Defendants indicated that they, as a group, objected to this portion of VoxPath's infringement contentions.  Weiss Decl. Ex. S (email received at 10:01 a.m. Pacific during the meet and confer that started at 10:00 a.m. Pacific).  VoxPath informed Defendants both during the meet and confer and in writing that, given the lack of notice regarding the issue, VoxPath could not meet and confer until after it had a chance to analyze Defendants' concerns. Weiss Decl. at ¶ 5, Ex. T.  VoxPath never heard from Defendants again regarding any concern with claims 5-9 of the '530 patent.  Weiss Decl. at ¶ 5.[4]

Although Defendants indicated they would be filing a motion shortly after the December 9, 2011 meet and confer, Defendants did not do so.  Instead, Defendants continued to litigate the case, including serving invalidity contentions and responding to discovery requests.[5]  Based on Defendants lack of action, VoxPath assumed that Defendants had decided against filing their motion.  It was not until over three months after the parties' final meet and confer, during the

---

[4] The JVC, LG and Best Buy defendants followed-up with VoxPath separately regarding concerns with the infringement contentions.  Most of the concerns raised by these defendants mirrored the general concerns of all of the Defendants.

[5] VoxPath has expressed concerns with Defendants' limitation of discovery to the charted products as well as Defendants' invalidity contentions.  If necessary, VoxPath will address each of these issues with the Court.  Defendants have made this difficult, however.  For example, although VoxPath raised its concerns regarding Defendants' invalidity contentions almost 6 weeks ago, Defendants only responded to VoxPath's concerns yesterday.

telephonic conference with the Court on March 19, 2012, that Defendants informed VoxPath that they had not in fact dropped their objections.[6]

## III.   ARGUMENT.

VoxPath, which is a small company with limited resources, has spent over $125,000 purchasing, reverse engineering and studying, in conjunction with its technical consultants and attorneys, Defendants' infringing devices.  The result of VoxPath's extensive work is illustrated in the infringement contentions.  VoxPath's infringement contentions comply with the requirements of the applicable local rules.

Preliminarily, VoxPath believes that this Court should evaluate VoxPath's infringement contentions pursuant to the law under which they were prepared and served in the Eastern District of Texas.  This case was not transferred to this District until well after VoxPath prepared and served its infringement contentions and the parties had completed the meet and confer process leading up to this Motion.  Indeed, if Defendants had filed their Motion in a timely manner, the Motion would have been briefed while this case was still pending in the Eastern District of Texas.  Thus, in this unique situation, to the extent that the rules and applicable case law in this District differ from those of the Eastern District of Texas,[7] the Court should in fairness evaluate the sufficiency of VoxPath's contentions pursuant to the rules and law of the Eastern District of Texas.  In any event, VoxPath's infringement contentions are more than

---

[6] Defendants' factual background raises for the first time that VoxPath accused two Sony products that are not capable of playing optical discs, the HT-SS2300 and HT-SS360.  Motion at 10.  It appears that these products were mistakenly named in this lawsuit, and VoxPath withdraws its allegations against Sony's HT-SS2300 and HT-SS360.  Similarly, as VoxPath has informed JVC, it will of course not accuse the MVR150 if it is not in fact a product sold by JVC despite the publicly available evidence to the contrary.

[7] The text of the relevant portion of the Eastern District of Texas' Local Patent Rules is similar to this Court's corresponding rule:  "A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."  Weiss Decl. Ex. U at 6.

sufficient and comply with both the requirements of Eastern District of Texas' Local Patent Rule 3-1 and this Court's L. Pat. R. 3.1.

Defendants' Motion raises three issues.  First, Defendants' complain that VoxPath's infringement contentions for the '530 patent do not identify specific "structures or features" that perform the formation of an added signal functionality of claim 1.  Second, Defendants complain that VoxPath's infringement contentions regarding the dependent claims of the '530 patent are insufficient.  Third, Defendants complain that VoxPath has provided representative infringement charts, rather than an individual chart for each Accused Instrumentality.  For the reasons below, all of Defendants' arguments must fail.

### A.    VoxPath Has Disclosed The Accused Structures Containing The First And Second Wiring Patterns.

Defendants' first complaint is with respect to VoxPath charts for two elements of claim 1 of the '530 patent.  The relevant limitations of claim 1 of the '530 patent are reproduced below:

> a pair of first wiring patterns respectively connected to the first pair of light-receiving cells for leading out output signals therefrom to form a first added signal in which the output signals are added;

> a pair of second wiring patterns respectively connected to the second pair of light-receiving cells for leading out output signals therefrom to form a second added signal in which the output signals are added, the first and second added signals used for forming a tracking error signal which indicates tracking error of the optical data reading;

Gewirtz Decl.[8] Ex. 2 at 8:11-21.  VoxPath has provided sufficient infringement contentions to illustrate its theories regarding how Defendants infringe each of these elements.

### 1.    VoxPath's Infringement Contentions Disclose Where The Infringement Is Occurring In The Accused Instrumentalities As Required By The Local Rules.

Both the Eastern District of Texas' Local Patent Rule 3-1(c) and L. Pat. R. 3.1(c) require that VoxPath's infringement contentions identify "specifically where each element of each

---

[8] "Gewirtz Decl." refers to the Declaration of Gregory S. Gewirtz In Support Of Defendants' Motion To Strike VoxPath's Infringement Contentions, ECF No. 268-1.

asserted claim is found" in the Accused Instrumentalities.  Weiss Decl. Ex. U at 6; L. Pat. R.

3.1(c).  VoxPath has shown where each of the limitations of claim 1 is found within the Accused

Instrumentality.  As Defendants acknowledge in their Motion, the infringement of these elements

of claim 1 of the '530 patent occurs in the optical pickup unit of the Accused Instrumentalities.

*E.g.*, Motion at 21.  Within the optical pickup unit, VoxPath has expressly identified the

structures that practice the required elements of "a pair of first wiring patterns" and "a pair of

second wiring patterns" that are connected to the light-receiving cells:



Weiss Decl. Ex. B at 11 (sample picture from chart for the Sony BDP-BX37, Sony BDP-BX57,

Sony BDP-S470, Sony BDP-S370, Sony BDP-S570, Sony BDPV-E570, Sony BDV-E770,

and Sony CECH-2101A).  In light of the evidence reasonably available from VoxPath's

extensive pre-filing and post-filing investigation, including consulting with expert consultants

and reverse engineering many of the Accused Instrumentalities, VoxPath believes that it is

inherent that the signals traveling through the identified wiring patterns are combined to form added signals which are in turn used to form a tracking error signal, as required by claim 1 of the '530 patent.[9]  *E.g.*, *id.* at 12.  VoxPath's investigation and contentions are further supported by contemporaneous literature indicating that the tracking error signal used by the Accused Instrumentalities is likely generated by an algorithm that generates tracking error by "summation of the signals from quadrants 1 and 3 and of those from quadrants 2 and 4…" Weiss Decl. Ex. V at 4426; *see also id.* at 4425 ("The DPD scheme that is currently used for tracking on DVD-ROM disks will also be used in future DVD-RAM (rewritable digital versatile disk) drives….").[10]

The sufficiency of VoxPath's infringement contentions also comports with the policy underlying the rules in the Eastern District of Texas and Northern District of California and, although not yet expressly addressed in this District, also likely the policy underlying L. Pat. R. 3.1(c).  Infringement contentions are "merely designed to streamline the discovery process." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)  (quoting *Network Caching Technology, LLC v. Novell, Inc.*, C.A. No. C-01-2079, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003)); *see also Whipstock Servs. v. Schlumberger Oilfield Servs.*, C.A. No. 6:09-cv-113, 2010 U.S. Dist. LEXIS 1395, at *3 (E.D. Tex. Jan. 8, 2010) ("This notice focuses discovery and narrows issues for claim construction, summary judgment, and trial.").  They "are not meant to provide a forum for litigation of the substantive issues."

---

[9] It appears that, due to an inadvertent error, VoxPath's amended infringement contentions do not expressly say that the second added signal is also inherent based on the publicly available evidence.  Although the Motion indicates otherwise, Defendants are aware of VoxPath's theory.  Weiss Decl. Ex. W ("While we now understand from your email below that Voxpath now contends that the accused structure is inherent based on publicly available information…").  If the Court finds this error to be problematic, VoxPath will seek permission from the Court to further amend the infringement contentions to address this error.

[10] DPD, which stands for differential phase detection, is a scheme for generating tracking error by, among other things, adding the signals from a quadrifid photodector as required by claim 1 of the '530 patent.  Weiss Decl. Ex. V at 4426.

*STMicroelectronics*, 308 F. Supp. at 755.  VoxPath's infringement contentions fully meet the purpose of the rule; discovery regarding the '530 patent will be limited to the portions of the optical pickup unit in the Accused Instrumentalities that are related to the wiring patterns for the quadrifid photodetectors and how Defendants generate tracking error signals.  VoxPath expects that this will be a very limited set of schematics, wiring diagrams, source code and descriptive documents.  Thus, VoxPath's infringement contentions satisfy the policy goals of streamlining the discovery process.

> ### 2. Defendants' Arguments Fail Because Neither The Claims Nor The Applicable Rules Require VoxPath To Point To A "Structure Or Feature" That Forms Added Signals.

Although Defendants are aware of where VoxPath alleges the infringing functionality is occurring and VoxPath's theories of infringement, Defendants argue that VoxPath's infringement contentions are insufficient because they do not point specifically to a "structure or feature" that creates the added signals required by claim 1.[11]  Defendants baldly assert that VoxPath should be able to point to an adder circuit or a chip running firmware to perform the adder functionality in its infringement contentions.  Defendants have no support or basis for these statements. Defendants' argument ignores, as shown in the micro-photograph reproduced above, that the accused functionality occurs in a very small scale and it is difficult, if not impossible, to determine the specific functionality of every part.   Indeed, Defendants' own invalidity contentions also undermine Defendants' argument that the information they are demanding is reasonably and publicly available.  In asserting that some of Sony's old products allegedly invalidate claim 1 of the '530 patent, Defendants rely on Sony's confidential, not publicly available, information to support their allegation.  Weiss Decl. at ¶ 29, Ex. X at 5, 7.

---

[11] Although this will be addressed in more detail in claim construction briefing, if necessary, Defendants appear to be importing a "structure or feature" limitation for the first and second added signal limitations that is not present in claim 1.  This is inappropriate.

Defendants' assertion that VoxPath was required to do additional and expensive reverse engineering beyond that already done by VoxPath is also contrary to VoxPath's legal obligations. Both the Eastern District of Texas and the Northern District of California have found that the reverse engineering demanded by Defendants in this case is not required. *STMicroelectronics*, 308 F. Supp. 2d at 755 ("The question of whether [the disclosing party] conducted 'reverse engineering or its equivalent' is not synonymous with whether it has complied with Patent [Rule] 3-1, which, as discussed, requires only to set forth specific theories of infringement." (quoting *Network Caching*, 2003 U.S. Dist. LEXIS 9881 at *14)); *see also FusionArc, Inc. v. Solidus Networks, Inc.*, C.A. No. C 06-06760, 2007 U.S. Dist. LEXIS 28970, at *7-8 (N.D. Cal. Apr. 5, 2007) ("As a motion to compel amendment of the PICs, however, it fails because FusionArc has adequately established it has provided all of the information in its possession as to how and why it believes Solidus's services infringe the '546 patent…FusionArc has disclosed, to the extent of its present knowledge, where it believes the infringement lies.").   The important aspect of infringement contentions is that they "provide a defendant with notice of a plaintiff's infringement theories" to "focus[] discovery and narrow[] issues for claim construction, summary judgment, and trial." *Whipstock Sevs.*, 2010 U.S. Dist. LEXIS 1395, at *3; *see also Linex Techs., Inc. v. Belkin Int'l, Inc.,* 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008) ("require plaintiffs to set forth specific theories of infringement at the outset of a case….   Enough specificity is required to give an alleged infringer notice of the patentee's claims.").   "The Rules do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case." *Whipstock*, 2010 U.S. Dist. LEXIS 1395, at *4.   VoxPath's infringement contentions are more than adequate to give Defendants notice of VoxPath's claims in this litigation.

The case law relied on by Defendants also does not support their argument.    In *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005), the infringement contention charts simply mimicked the claim language and did not indicate where in the infringing products the infringement was taking place or provide any explanation as to how the accused products infringed the asserted patent.  *Id.* at 528.  The court in *Linex* faced similarly undetailed infringement contentions.  628 F. Supp. 2d at 711 (addressing a situation where plaintiff only provided a single claim chart for each claim against multiple defendants without any reference to specific products).  As explained above, VoxPath's infringement contentions both indicate where the infringement is taking place and VoxPath's theory as to how the infringement is taking place.

*Shared Memory Graphics LLC v. Apple Inc.*, No. C 10-2475, 2011 U.S. Dist. LEXIS 99166 (N.D. Cal. Sept. 2, 2011) is also inapplicable in this situation.  In *Shared Memory*, the plaintiff refused to comply with a previous court order finding its original infringement contentions insufficient and requiring the plaintiff to specifically identify the circuitry that corresponded to a claimed element, the "data distribution bus."  2011 U.S. Dist. LEXIS 99166, at *14.  In spite of the court order, plaintiff maintained its original position and simply assumed the presence of the element without evidence.  *Id.* at *18.  In contrast, VoxPath has not simply assumed the presence of an element; VoxPath has purchased and reverse engineered over 80 infringing products and, in consultation with expert technical consultants, determined that the infringing functionality is in the optical pickup unit.

Defendants' remaining case cites are not related to sufficiency of infringement contentions at all.  *Int'l Development LLC v. Richmond*, C.A. No. 09-2495, 2011 U.S. Dist. LEXIS 4453 (D.N.J Jan. 17, 2011) addressed a situation where the plaintiff attempted to add several hundred new products on the eve of trial.  *Id.* at *4.  This case is still early in discovery

and VoxPath is not seeking to add new products on the eve of trial.  In both *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1360 (Fed. Cir. 2006) and *SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1292 (Fed. Cir. 2005), the Federal Circuit reviewed evidentiary rulings, not the sufficiency of the infringement contentions served in those cases.

Accordingly, VoxPath's infringement contentions with respect to claim 1 of the '530 patent are sufficient and should not be struck.

**B.      VoxPath's Infringement Contentions For Claims 5-9 Of The '530 Patent Are Sufficient And Comply With The Applicable Rules.**

Defendants' second complaint is with respect to VoxPath's contentions for clams 5-9 of the '530 patent.  As a preliminary matter, in violation of this Court's Local Rules, Defendants have failed to meet and confer with VoxPath regarding these complaints. L.Civ.R. 37.1.  The objection to the infringement contention for claim 5-9 was raised in correspondence by a single defendant group, the LG defendants, but the LG defendants never responded to VoxPath's responsive correspondence and the parties did not meet and confer.  Weiss Decl. at ¶ 30, Exs. R, Y.  Indeed, although Defendants did try to raise this issue at the last minute before the final meet and confer regarding the infringement contentions, VoxPath expressly informed Defendants that they had not met and conferred regarding these concerns.  Weiss Decl. at ¶ 5, Ex. T.  The Defendants never sought to actually meet and confer regarding these issues.    Thus, this complaint in Defendants' Motion should be denied on this basis alone.

Setting aside Defendants' disregard for the requirement to meet and confer, VoxPath's infringement contentions for claims 5-9 of the '530 patent are sufficient for the same reasons detailed above.  VoxPath spent significant resources purchasing and reverse engineering over 80 infringing devices.  Based on the information reasonably available to it, including the opinion of its expert technical consultants, VoxPath believes that its contentions are sufficient. Furthermore, as discussed above, VoxPath's infringement contentions comply with the policy

goals of the local patent rules because they define and limit the technical discovery likely to be needed regarding the infringement of the '530 patent.   Thus, Defendants' Motion should be denied with respect to claim 5-9 of the '530 patent was well.

### C.   VoxPath's Representative Infringement Contentions Sufficiently Disclose VoxPath's Theory Of Infringement For Both The '378 And '530 Patent And, In Light Of The Similarities Of The Accused Products, VoxPath's Representative Contentions Are Sufficient.

Defendants' third complaint is that VoxPath has provided 107 representative infringement charts (86 for the '378 patent and 21 for the '530 patent[12]), covering products for each Defendant, but has not provided a separate chart for each Accused Instrumentality.   The complaint is unjustified.   Because VoxPath's extensive investigations revealed that the theory of infringement for the Accused Instrumentalities was consistent among the studied products, VoxPath's charts are consistent with both the law of the Eastern District of Texas, which should apply here, and the likely law of this District.[13]

In the Eastern District of Texas, a plaintiff may provide a single chart for multiple accused products where "products likely operate in a manner reasonably similar to the infringement theory described in [plaintiff's] PICs." *Honeywell Int'l, Inc. v. Acer America Corp.,* 655 F. Supp 2d 650, 657 (E.D. Tex. 2009); *see also Juxtacomm Techs., Inc. v. Ascential Software Corp.,* 548 F. Supp 2d. 379, 381 (E.D. Tex. 2008).   Although not addressing a specific set of local patent rules, the Federal Circuit has made a similar statement in the Rule 11 context: "when a number of different products are charged with infringement, it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations.   At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the

---

[12] Many of the '530 patent charts cover multiple Accused Instrumentalities.

[13] The question of the adequacy of representative infringement charts pursuant to L. Pat. R. 3.1(c) appears to be one of first impression for this District.

14

accused products infringe." *Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066, 1075 (Fed. Cir. 2002).

The Northern District of California has also held that a patentee may create representative charts. *See Implicit Networks, Inc. v. Hewlett-Packard Co.,* Civil Case No. 10-03746 SI, 2011 U.S. Dist. LEXIS 100283, at *5 (N.D. Cal. Sept. 7, 2011) (finding sufficient plaintiff's charts that "identify for each category of products at issue how exactly [plaintiff] believes [defendant's] group of products infringes on each claim."); *Renesas Tech. Corp. v. Nanya Tech. Corp.,* Civil Case No. 44138, 2005 U.S. Dist. LEXIS 44138, at *12 (N.D. Cal. Aug. 18, 2005) ("No one disputes that there are differences in the architecture of product families, but [plaintiff] convincingly asserts that the differences do not make a 'difference' for preliminary infringement-analysis purposes.").

VoxPath's infringement charts satisfy this standard.  VoxPath spent substantial resources, both financial and otherwise, to purchase, reverse engineer and study over 80 of Defendants' products.  In combination with the opinions of its expert consultants, VoxPath found that its theories of infringement remained consistent across all of the products studied.  For the '378 patent, for example, all of the products studied used a multi-function volume holographic optical element with similar features.  *See, e.g.*, Weiss Decl. Exs. A, C, E, F, G.  Similarly, for the '530 patent, VoxPath found that the products studied used the required quadrifid photodetector with three wiring patterns.  *See, e.g.*, Weiss Decl. Exs. B, D, H.  VoxPath has a more than reasonable basis for its assertion that all of the relevant aspects of all of the Accused Instrumentalities operate in a similar manner and that VoxPath's theories of infringement are likely to be consistent across all of the Accused Instrumentalities.  VoxPath's representative infringement charts are therefore sufficient.  *E.g.*, *Honeywell Int'l,* 655 F. Supp 2d at 657.

Defendants dispute VoxPath's position but provide no factual support for why VoxPath's position is inconsistent with applicable case law.  VoxPath has reverse engineered and studied over 80 representative examples of the Accused Instrumentalities, including blu-ray disc players, DVD disc players and Sony's Playstation 3 video game system.  *E.g.*, Weiss Decl. Exs. A, C, E, F, G (charts for the '378 patent); Exs. B, D, H (charts for the '530 patent).  While there are differences among the products, the location (*i.e.,* the optical pickup unit) and theories of infringement remain consistent.  *Id.*  Despite multiple requests during the meet and confer process, Defendants continue to refuse to provide any specific factual basis for their assertion that VoxPath's charts do not comply with the patent rules of the Eastern District of Texas or this District.  Defendants do not answer, for example, the question of what relevant differences in the "product classes" make VoxPath's charts not representative.  Similarly, although different devices may use different optical pickup units, Defendants do not specifically address what relevant differences there might be that are not already addressed in VoxPath's 107 representative infringement contention charts.  Defendants' refusal to provide facts supporting their argument dooms their argument.  *E.g.*, *Implicit Networks,* 2011 U.S. Dist. LEXIS 100283, at *7 (rejecting argument similar to Defendants' because the defendants provided "no specific argument, much less evidence, that any of the products grouped together in the categories used by Implicit actually function in different ways that make Implicit's categorization improper.")

Defendants' argument also fails from a policy perspective.  As discussed above, VoxPath's infringement contentions satisfy the policy goals of infringement contentions by disclosing VoxPath's theories of infringement and focusing discovery in the case.  VoxPath's infringement contentions sufficiently narrow discovery to just the relevant information regarding the features of the volume holographic optical elements used in Defendants' Accused Instrumentalities (for the '378 patent) and the schematics and wiring patterns related to

Defendants' generation of tracking error signals using quadrifid photodetectors (for the '530 patent). In light of the facts provided by VoxPath and the lack of facts by Defendants, it would elevate form over substance to require VoxPath to spend hundreds of thousands of additional dollars purchasing, reverse engineering and studying every one of the Accused Instrumentalities.[14]

Defendants' citation to *Connectel* and *Int'l Development* do not support Defendants' argument. As described above, the court in *Connectel* addressed a situation where, unlike here, the plaintiff did almost nothing to disclose where the infringement was taking place in each infringing product. 391 F. Supp. 2d at 528. It did not address the representative infringement contention chart issue at all. *Int'l Development* is also irrelevant because it addressed a situation where a plaintiff sought to expand the number of infringing products from 15 to 300 on the eve of trial. 2011 U.S. Dist. LEXIS 4453, at *4. This is not the situation here.

Accordingly, Defendants' third argument should also be rejected.[15]

### D. If The Court Finds That Defendants' Motion Has Merit, VoxPath Should Be Given The Opportunity To Amend Its Infringement Contentions To Correct The Deficiencies Identified By The Court.

Although VoxPath does not believe that Defendants' Motion should be granted, if the Court finds that Defendants' Motion is meritorious, the Court should treat Defendants' Motion as a request to compel VoxPath to amend its infringement contentions. The Court should give VoxPath the opportunity to correct the deficiencies identified by the Court. This is consistent with the practice in other districts, such as the Northern District of California. *FusionArc*, 2007 U.S. Dist. LEXIS 28970, at *7 ("courts will treat a 'motion to strike' preliminary contentions as a

---

[14] Such a task would also be complicated by the fact that many of the Accused Instrumentalities may no longer be readily available for purchase.

[15] Separately, the JVC defendants also raise an issue that they should be dropped from the lawsuit because of the customer suit exception. Motion at 11, n.10. This issue is not ripe for motion practice, nor is it appropriately raised here. Contrary to JVC's footnote, it is separately liable because, at the very least, some of its own products are accused of infringement and, even for those supplied by LG, the customer suit exception does not apply to JVC.

motion to compel the plaintiff to *amend* them to provide additional information, where appropriate" (emphasis in original)).

## IV.    CONCLUSION.

For the foregoing reasons, VoxPath's infringement contentions comply with the local patent rules of both this District and the Eastern District of Texas.  Defendants are on notice of VoxPath's theories of infringement and VoxPath's infringement contentions narrow the relevant discovery and issues in this case.  Therefore, VoxPath respectfully requests that the Court deny Defendants' Motion.

Dated:  April 13, 2012                              **LITE DEPALMA GREENBERG, LLC**

                                                    *   /s/ Michael E. Patunas*
                                                    Two Gateway Center, 12th Floor
                                                    Newark, New Jersey 07102
                                                    (973) 623-3000

                                                    mpatunas@litedepalma.com
                                                    mtarantino@litedepalma.com