UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VOXPATH RS, LLC | : **Document Filed Electronically** |
| Plaintiff, | : Civil Action No. 12-952-DMC-JAD |
| v. | : |
| LG ELECTRONICS U.S.A., INC. *et al*. | : |
| Defendants. | : |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO STRIKE VOXPATH'S INFRINGEMENT CONTENTIONS**

1765051_1.doc

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I. INTRODUCTION ........................................................................................................1

II. VOXPATH HAS NOT SHOWN THAT THE HUNDREDS OF UNCHARTED ACCUSED PRODUCTS ARE "REASONABLY SIMILAR" TO THE CHARTED PRODUCTS.................................................................1

III. VOXPATH HAS FAILED TO IDENTIFY ACCUSED PRODUCT FEATURES CORRESPONDING TO CLAIM LIMITATIONS OF THE '530 PATENT .............................................................................5

    A. VoxPath's Parroting Of The Language Of Claims 5-9 Of The '530 Patent Does Not Satisfy Rule 3.1(c) .........................................5

    B. VoxPath Has Not Identified Any Structure In The Accused Products For Forming "Added Signals" ................................................6

        1. VoxPath's "Inherency" Argument Is Insufficient .......................6

        2. VoxPath's Claim Of Infeasibility Is Unsupported .......................8

IV. VOXPATH'S DILIGENCE IN A CASE OF THIS MAGNITUDE WAS WHOLLY INADEQUATE ......................................................................10

V. CONCLUSION...........................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bender v. Maxim Integrated Prods. Inc.*,
　No. C 09-2475, 2010 WL 2991257 (N.D. Cal. July 29, 2010) .................................................... 3, 6, 8, 9

*Connectel, LLC v. Cisco Sys., Inc.*,
　391 F. Supp. 2d 526 (E.D. Tex. 2005) .................................................................................................. 5, 9

*FusionArc, Inc. v. Solidus Networks, Inc.*,
　No. C 06-06760, 2007 U.S. Dist. LEXIS 28970 (N.D. Cal. Apr. 5, 2007) ................................ 9

*Implicit Networks, Inc. v. Hewlett-Packard Co.*,
　No. C-10-3746 SI, 2011 U.S. Dist. LEXIS 100283 (N.D. Cal. Sept. 7, 2011) .......................... 2

*Int'l Dev. LLC v. Richmond*,
　No. CIV.A. 092495, 2011 WL 149859 (D.N.J. Jan. 28, 2011) ............................................. 2, 3

*Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*,
　308 F. Supp. 2d 1106 (N.D. Cal. 2004) ............................................................................................. 6

*InterTrust Techs. Corp. v. Microsoft Corp.*,
　No. C 01-1640, 2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) .......................................... 9, 10

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
　628 F. Supp. 2d 703 (E.D. Tex. 2008) ............................................................................................. 7, 9

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
　No. C03-05709, 2005 U.S. Dist. LEXIS 44138 (N.D. Cal. Aug. 18, 2005) .............................. 2

*Shared Memory Graphics, LLC v. Apple Inc.*,
　No. C-10-02475, 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011) ........................................ 6, 8, 9

*STMicroelectronics v. Motorola, Inc.*,
　308 F. Supp. 2d 754 (E.D. Tex. 2004) .............................................................................................. 9

**Statutes, Rules & Other Authorities**

L. Pat. R. 3.1(c) ................................................................................................................................... 1, 5

L. Pat. R. 3.1(a)-(c) ................................................................................................................................ 6

L. Pat. R. 3.2A ...................................................................................................................................... 7

## I.     INTRODUCTION

There are three problems with VoxPath's infringement contentions.  First, with respect to dependent claims 5-9 of the '530 Patent, VoxPath's infringement contentions do nothing more than parrot the language of the claims.  There is no question this is not sufficient under the Court's local rules.

Second, VoxPath does not identify for any of the accused products any specific structure that "forms added signal[s]," as required by all of the asserted claims of the '530 Patent.  Rather than identify a specific structure, VoxPath states it "believes" it is "likely" that such structure exists.  (Dkt.284, at 8-9, 13.)  More than just a "belief" in an infringement, however, is required under the local patent rules.  *See* L. Pat. R. 3.1(c).

Third, with respect to the hundreds of products for which VoxPath has not provided any claim chart, VoxPath contends it was not necessary to prepare claim charts because VoxPath "believes" the products are "reasonably similar" to charted products for purposes of infringement. (Dkt.284, at 15.)  But VoxPath does not explain *how* the uncharted products are similar.  And, although it was not defendants' burden to do so, defendants have explained why the charted products are *not* representative of the uncharted products because they use different optical pickup units and, in many cases, are in different product classes entirely.  (*See* Dkt.268, at 8-14.)

In short, VoxPath has done nothing to rebut defendants' showing that VoxPath's infringement contentions as to the uncharted products and as to the '530 Patent are insufficient.

## II.    VOXPATH HAS NOT SHOWN THAT THE HUNDREDS OF UNCHARTED ACCUSED PRODUCTS ARE "REASONABLY SIMILAR" TO THE CHARTED PRODUCTS

VoxPath does not dispute that, for each asserted patent, it has failed to submit infringement charts for more than 400 of the approximately 500 products accused of infringement.  Neither does it dispute that, as a matter of law, a patentee must demonstrate that

1765051_1.doc

the differences between any uncharted product and those charted are "insignificant." *Int'l Dev. LLC v. Richmond*, No. CIV.A. 092495, 2011 WL 149859, at *2 n.1 (D.N.J. Jan. 28, 2011). VoxPath has not met this standard.

VoxPath attempts to justify its failure to submit charts for the vast majority of asserted products by arguing that its "theory of infringement for the accused instrumentalities was consistent among the studied products" (Dkt.284, at 14; *see also id.* at 16), but nowhere does VoxPath articulate what this supposed "theory of infringement" is. It merely says that, for the '378 Patent, "the products studied used a multi-function volume holographic optical element with similar features," and for the '530 Patent, "the products studied used required quadrifid photo-detector with three wiring patterns." (*Id.* at 15.) These conclusory, high-level statements do not establish any "theory of infringement" that would put defendants on notice of what specific features of the accused products are alleged to infringe.

Moreover, VoxPath's statement that its "theory of infringement" was the same among charted products says nothing about whether the *uncharted* products (which VoxPath did not even purchase) have features consistent with that "theory." In short, VoxPath has not advanced any basis on which it could properly use the charted products as "representative" of the hundreds of uncharted products that have different components and, therefore, different operation.[1]

VoxPath improperly seeks to shift the burden to defendants, arguing that "[D]efendants have provided no basis to believe VoxPath's infringement contention charts are *not*

---

[1] VoxPath's failure to articulate a basis for using "exemplar" products distinguishes this case from *Implicit Networks, Inc. v. Hewlett-Packard Co.*, No. C-10-3746 SI, 2011 U.S. Dist. LEXIS 100283, at *6-7 (N.D. Cal. Sept. 7, 2011), in which the patentee identified specific theories of infringement and established how each accused product fell into one of those theories, and *Renesas Technology Corp. v. Nanya Technology Corp.*, No. C03-05709, 2005 U.S. Dist. LEXIS 44138, at *9-10, 12 (N.D. Cal. Aug. 18, 2005), in which the patentee reverse engineered accused products and offered expert opinions to link the remaining accused products under its infringement analysis.

representative." (*Id.* at 2 (emphasis supplied).) But it is not defendants' obligation to prove that its uncharted accused products are different from the charted products; rather, it is VoxPath's burden to chart the accused products or demonstrate that any differences between the uncharted products and those charted are *insignificant*. *Int'l Dev.*, 2011 WL 149859, at *2; *Bender v. Maxim Integrated Prods. Inc.*, No. C 09-2475, 2010 WL 2991257, at *3 (N.D. Cal. July 29, 2010).

Contrary to VoxPath's suggestion, defendants *have*, in any event, demonstrated that the uncharted accused products are different from the charted products. As defendants explained in their opening brief, VoxPath has ignored certain product categories entirely. For example, VoxPath submitted '530 Patent claim charts for only a single JVC Blu-ray disc player and for a handful of Sony's Blu-ray disc players but *none* for JVC's and Sony's many accused DVD players. (*Id.* at *8-9.) Because DVD and Blu-ray players use different wavelengths of light to read optical discs, they operate in fundamentally different ways. (Exh. 11[2], at 23 Table 1.) As a result, an infringement chart for a Blu-ray disc player cannot properly be used as "representative" of the infringement analysis for a DVD player.

As defendants further explained in their opening brief, many uncharted products use different optical pickup units than the charted products, and accordingly, there is no basis to assert that they operate in a similar manner. (*See* Dkt.268, at 8-14.) By way of example, the 78 Sony DVD products that VoxPath failed to chart under the '530 Patent employ approximately 20 different optical pickup units and at least 9 different photodetector arrays made by different suppliers, none of which are used in any of the charted Sony Blu-ray products. Likewise, LG Electronics' accused products incorporate optical pickup units from many suppliers, but VoxPath

---

[2]Exh. __ refers to the indicated exhibit attached to the Declaration of Russell W. Faegenburg submitted in support of this reply brief.

has only charted accused products containing some of them. (*See* Dkts.268-6, 268-8.) VoxPath simply assumes that the optical pickup units in the charted LG products include the same type of beam splitter as in uncharted LG products using optical pickup units *from other vendors*. There is no reasonable basis for this assumption. This is not a situation where an industry standard dictates the structure of the beam splitter used in the accused products.

JVC has communicated similar concerns to VoxPath, asking: "If you have a basis for contending that any products listed in Exhibit C [to VoxPath's infringement contentions] are in fact 'reasonably similar' to the XV-BP1J [the single product for which a chart was provided], please immediately provide that basis in writing." (Exh. 12, at 3.) VoxPath has not done so. In fact, all but one of the uncharted JVC products are *not* reasonably similar as they are DVD players supplied to JVC by LG and others.[3] (*See* Dkt.268, at 10-11.) And some JVC accused products do not even include a holographic element, and thus have no conceivable relation to the '378 Patent. (Dkt. 268-8, Finkel letter 2, Dec. 2, 2011.) VoxPath was made aware of this, but never substantively responded.[4]

The problem is especially acute for Best Buy, which obtains components for its retail products from numerous suppliers, making it unlikely that all of the optical pickup units in those products are "reasonably similar." (Dkt.268-8, McMahon letter, Dec. 27, 2011.) Fairness requires that Best Buy be given the detailed notice required by the local rules, so that it can defend itself.

---

[3]The remaining product is a Blu-ray player supplied to JVC by LG.
[4]Contrary to VoxPath's suggestion (Dkt.284, at 5-6), at no time did defendants tell VoxPath that they were dropping their objections to VoxPath's infringement contentions. Rather, following the parties' December 2011 meet and confer, defendants prepared their motion to strike and were preparing to filing it when, on January 23, 2012, the case was transferred. Defendants then met with VoxPath in advance of the first conference with the Court and reiterated their objections.

In short, different product classes, and optical disc players using different optical pickup units, operate in different ways, and VoxPath has provided no explanation as to why such different products should be treated the same for purposes of infringement.

### III. VOXPATH HAS FAILED TO IDENTIFY ACCUSED PRODUCT FEATURES CORRESPONDING TO CLAIM LIMITATIONS OF THE '530 PATENT

In addition to failing to chart most of the accused products, VoxPath has ignored limitations required by the claims of the '530 Patent.

#### A. VoxPath's Parroting Of The Language Of Claims 5-9 Of The '530 Patent Does Not Satisfy Rule 3.1(c)

VoxPath's failure to comply with Local Patent Rule 3.1(c) is perhaps most egregious in the case of claims 5-9 of the '530 Patent. VoxPath does nothing more than repeat the language of the claims — verbatim — without showing where any of the claimed features are found in defendants' accused products. VoxPath says its contentions are sufficient because it conducted "reverse engineering" on a subset of accused products and therefore "believes" that the required claim elements are present in all accused products. (Dkt.284, at 13.) But a *belief* regarding the existence of a claim element has no legal significance absent an explanation *in the patentee's claim charts* of where and how the claimed features are present in the accused products. Contrary to VoxPath's suggestion, the mere recitation of claim language does not "limit the technical discovery likely to be needed" or provide notice to defendants of the nature of VoxPath's infringement case. (*Id.* at 13-14.) Accordingly, VoxPath's infringement contentions fail to comply with the local patent rules. *See Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) (infringement contentions that provide "vague, conclusory

language or simply mimicking the language of the claims when identifying infringement fail to comply with [E.D. Tex.] Patent Rule 3-1").[5]

### B. VoxPath Has Not Identified Any Structure In The Accused Products For Forming "Added Signals"

#### 1. VoxPath's "Inherency" Argument Is Insufficient

VoxPath admits that it has not identified any specific structure in the accused products capable of forming "first" and "second" "added signals," as required by all asserted claims of the '530 Patent, but "believes that it is inherent" that the hundreds of accused products include such structure. (Dkt.284, at 8-9.) VoxPath's *assumption* that some unknown, unspecified structure among the hundreds of components in the optical pickup unit of each accused product forms the required "added signals" is at odds with the Court's local rules, which require a chart identifying "***specifically where each limitation of each asserted claim is found within each Accused Instrumentality***." L. Pat. R. 3.1(a)-(c) (emphasis supplied); *Shared Memory Graphics, LLC v. Apple Inc.*, No. C-10-02475, 2011 WL 3878388, at *6 (N.D. Cal. Sept. 2, 2011) (patentee may not escape its obligation to locate each claim element within the accused devices simply by stating that it *assumes* the element to be present); *Bender*, 2010 WL 2991257, at *2 (same). In essence, VoxPath asks defendants to explain why their products do *not* infringe before VoxPath ever explains why the products *do* infringe. This frustrates the purposes of the patent local rules, which is to "ensure that litigants put all their cards on the table up front." *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.,* 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004).

---

[5]VoxPath's complaint that the parties did not adequately meet and confer regarding claims 5-9 of the '530 Patent has no merit. Defendants raised the insufficiency of VoxPath's contentions as to those claims in early December 2011, and VoxPath has had more than four months to provide supplemented contentions, but has refused to do so. (Dkt.284-4 Exh. Y.) There is nothing further about which the parties could even "meet and confer," given that the dispute is clear: VoxPath maintains that simply mimicking the claim language is sufficient, whereas defendants object to this approach as insufficient. Accordingly, the issue is ripe for determination.

VoxPath's position that it has satisfied the local rules is akin to a patentee suing for infringement of a patent covering an automobile with an engine having an inventive piston, but doing nothing more than identifying the engine as the infringing structure. That does not identify "specifically" where the claimed piston is found, and does not provide notice to the defendants of the plaintiff's infringement theory. Only when VoxPath points to specific structures within the optical pickup unit of each accused product can defendants respond with their arguments as to whether those features do or do not meet the claim limitations. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 714 (E.D. Tex. 2008); *see also* L. Pat. R. 3.2A.

To support its "inherency" argument, VoxPath relies on a 1998 article regarding tracking error signals in optical disc players. According to VoxPath, the article indicates that the tracking error signals used in the accused products are "likely" generated by adding signals from "quadrants 1 and 3," and from "quadrants 2 and 4," respectively, of the optical pickup units. (Dkt.284, at 9 (citing Dkt.284-4, Weiss Decl. Exh. V, at 4426).) But the article does not purport to describe the characteristics of any of the *accused products*, nor does it describe the Blu-ray standard or any other standard. Accordingly, it is nothing more than a recitation of certain features that designers in 1998 *might* have chosen to incorporate into subsequent products.

In fact, VoxPath's claim that it is "likely" that each accused product uses differential phase detection ("DPD") for tracking error does not establish that the accused products *inherently*, *i.e.*, necessarily, produce the claimed "added signals." To the contrary, DPD can be implemented in different ways (Exh. 13, at 6975-76) and VoxPath's article identifies commonly used alternatives to DPD, including the "single-beam push-pull technique" (Dkt.284-4 Exh. V, at 4425.) In short, VoxPath's article, which is not accompanied by any expert declaration regarding its purported significance, does not provide any theory as to the presence of structure in the accused products to form first and second "added signals" in the manner claimed.

## 2. **VoxPath's Claim Of Infeasibility Is Unsupported**

VoxPath argues in the alternative that it would be infeasible to identify structure in the accused products that forms "added signals" because "the accused functionality occurs in a very small scale and it is difficult, if not impossible to determine the specific functionality of every part." (Dkt.284, at 10.) But VoxPath has no expert, or even factual, support for these statements. They are pure attorney argument. Nowhere in VoxPath's declaration from Mr. Fleming does VoxPath state that it even attempted to find the claimed functionality, or what it would cost to do so — even for one product. And while VoxPath has defendants' confidential manuals and specifications regarding the accused products from document production in the Texas action, it has not used that information to support its infringement contentions. This belies VoxPath's suggestion that its failure to provide adequate infringement contentions is due to its inability to access nonpublic information concerning the accused products.[6]

VoxPath further argues that it was not obligated to "reverse engineer" defendants' products, but ignores that all plaintiffs must come into court with *a* basis for alleging infringement and "[t]here is no exception in the [local patent rules] for parties who do not want to spend the time and resources necessary to identify specifically where each limitation is found." *Shared Memory*, 2011 WL 3878388, at *5; *Bender*, 2010 WL 2991257, at *5 ("[w]hile . . . reverse engineering may well pose a financial hardship to plaintiff, it appears that he cannot maintain this lawsuit without undertaking reverse engineering or some equivalent"). To the extent courts have excused parties from conducting such analyses, it has been in situations in which analyzing the accused product was either impracticable (for example, because it

---

[6] VoxPath argues that defendants' reliance on confidential information in their invalidity contentions demonstrates that information necessary for VoxPath to prepare its infringement contentions is not publicly available. (Dkt.284, at 10.) That does not follow. Defendants could have conducted reverse engineering studies on the products asserted as invalidating prior art, but did not need to because Sony's product manuals were readily available. And for other invalidating prior art, defendants have *not* relied on any confidential information.

required knowledge of confidential source code unavailable to the patentee) or was unnecessary to prepare adequate infringement contentions. *Shared Memory*, 2011 WL 3878388, at *5; *Bender,* 2010 WL 2991257, at *5. Neither of those circumstances exists here.

First, VoxPath has made no showing that it would be impracticable to find circuitry or other structure that forms the "added signals." *See Linex*, 628 F. Supp. 2d at 709, 712 (although patentee may be unable to identify details of proprietary software code, it must still identify features of the accused products that are ascertainable from public information); *Connectel*, 391 F. Supp. 2d. at 528 (same). Second, VoxPath's infringement contentions are plainly inadequate without such information. And contrary to VoxPath's suggestion, in many cases courts have held that "reverse engineering" or its equivalent *is* required to satisfy the local patent rules. *E.g., Bender*, 2010 WL 2991257, *5; *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003).[7]

Arguments almost identical to those made here by VoxPath were rejected in *Shared Memory*. There, patentee SMG failed to identify specific circuitry in the accused products corresponding to a claimed "data distribution bus." *Id.* at *5. The magistrate judge held that SMG's contentions were therefore "too vague to provide fair notice as to what components and circuitry of the accused products infringe [the] patents," and ordered SMG to identify specific circuitry. *Id.* at *3, *4. SMG argued that it was infeasible to do so because "'these connections are too small to be seen' in the accused devices." *Id.* at *5. Rejecting this argument, the court

---

[7]*STMicroelectronics v. Motorola, Inc*., 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) does not support VoxPath's claim that "reverse engineering" is not required. (VoxPath Br. 11.) There, the court found that the patentee had been able to set forth specific theories of infringement without reverse engineering. *STMicroelectronics,* 308 F. Supp. 2d. at 755-56. *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760, 2007 U.S. Dist. LEXIS 28970, at *7-8 (N.D. Cal. Apr. 5, 2007), also cited by VoxPath, did not even analyze whether "reverse engineering" is necessary; and, the court held that the patentee's infringement contentions were acceptable because the patentee "'link[ed]' its contentions regarding Solidus's accused systems to the claims of the patent."

held that "SMG's insistence that it need not identify the specific circuitry that purportedly satisfied these limitations because to do so would take months and cost hundreds of thousands, or even millions, of dollars is not well taken." *Id.* According to the court, SMG's argument was inconsistent with the plain language of the local patent rule, requiring a chart identifying specifically where each limitation of the claims was found in each accused instrumentality. *Id.* Thus, SMG was required to "reverse engineer." *Id.*

VoxPath's claim that reverse engineering was not necessary is particularly inappropriate given that VoxPath itself *undertook* to perform reverse engineering, but did an inadequate job of it. Given the breadth of VoxPath's infringement allegations, it had an obligation to "reverse engineer," if necessary, to identify structure that forms "first and second added signals."

VoxPath relegates to a footnote its suggestion that the claims of the '530 Patent do not require features that "add signals." (Dkt.284, at 10 n.11.) The plain language of the claims is to the contrary. VoxPath should not be permitted to read "added signals" out of the claims.

Defendants do not ask that VoxPath have *definitive* proof of infringement at this stage, but the rules require VoxPath to articulate *a* theory of infringement. Does VoxPath contend that a digital signal processor in the optical units adds signals from wiring patterns to form "added signals"? Does it contend that some other circuit performs that function? VoxPath simply has not specified its theory, and defendants thus have no way of responding to it.

### IV. VOXPATH'S DILIGENCE IN A CASE OF THIS MAGNITUDE WAS WHOLLY INADEQUATE

VoxPath admits that it did not even purchase 85% of the accused products, much less analyze them. In many cases, VoxPath has omitted entire product classes. For example, for the Sony, JVC, Onkyo, and Samsung defendants, while VoxPath has provided a few '530 Patent claim charts for Blu-ray players, it has submitted no infringement charts for any of the numerous DVD players accused of infringement. (*See* Dkt. 268, at 8-14.) VoxPath has also failed to take

account of differences among optical pickup units in the accused products, despite claiming that all such products are "reasonably similar" in operation, as explained above. (*Id.*) These fundamental oversights demonstrate that the problem is not the feasibility of conducting an infringement analysis, but VoxPath's refusal to undertake a proper investigation.

VoxPath's lack of diligence is perhaps best illustrated by its admission that it erroneously accused two Sony products of infringement that do not even play optical discs; namely, the Sony HT-SS2300 and HT-SS360. (Dkt.284, at 6 n.6.) VoxPath has made similar errors as to several accused JVC and LGE products that do not include any holographic element, including the SR-DVM700US and SRMV55US and BD270. Had VoxPath conducted even the most basic investigation of the defendants' accused products, it would have seen that these products could not possibly infringe.

VoxPath is a well-financed non-practicing entity, with little to no overhead, and has received substantial settlements from several defendants in this case. Even if VoxPath's unsupported claim that it spent $125,000 in its pre- and post-suit investigations is accepted, its expenditure of roughly $5,000 per defendant group for each patent[8] was woefully inadequate in a case of this breadth. VoxPath ignores the substantial, and far greater, expense to which it seeks to subject defendants in facing infringement claims for which VoxPath has not provided any expectation that it can ultimately prevail. VoxPath wants the best of both worlds: to accuse hundreds of products of infringement to create high potential damages and settlement leverage, without first conducting an investigation that would support such broad infringement allegations.

Why should defendants be required to spend millions of dollars defending themselves simply because VoxPath "believes" it is "likely" that defendants infringe? The rules require more than just a *belief* of infringement; they require an identification of the specific acts or

---

[8]VoxPath originally filed suit against 12 defendant groups, with four having settled.

features that constitute infringement, and nothing to which VoxPath cites excuses it from the obligation of explaining specific theories of infringement. The Court should reject VoxPath's attempt to engage in a fishing expedition and subject defendants to expensive discovery, where VoxPath has not remotely set out a case for infringement at the outset.

## V. CONCLUSION

For the foregoing reasons, defendants request an order striking VoxPath's infringement contentions as to uncharted products and as to the '530 Patent.

                                      Respectfully submitted,

Dated: April 23, 2012

By: /s/ Gregory S. Gewirtz
Gregory S. Gewirtz
Russell W. Faegenburg
Andrew T. Zidel
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
Tel:  908.654.5000
Fax:  908.654.7866
E-mail: ggewirtz@ldlkm.com; azidel@ldlkm.com;
        rfaegenburg@ldlkm.com;
        litigation@ldlkm.com
*Attorneys for Defendants Sony Corporation of America, Sony Computer Entertainment America LLC, Sony Electronics Inc., Sony Corporation, and Sony Computer Entertainment Inc.*

By: /s/ Emmett J. McMahon
Emmett J. McMahon  (*pro hac vice*)
Nicole E. Kopinski    (*pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
800 LaSalle Avenue
Suite 2800
Minneapolis, MN  55402
Tel:  612.349.8500
Fax:  612.339.4181
E-mail: ejmcmahon@rkmc.com
        nekopinski@rkmc.com

       Hillel I. Parness (HP-1638)
       ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
       601 Lexington Avenue
       Suite 3400
       New York, NY  10022
       Tel:    212.980.7400
       Fax:   212.980.7499
       E-mail: hiparness@rkmc.com

       *Attorneys for Defendants Best Buy Co., Inc., BestBuy.com, LLC, Best Buy Stores, L.P. and Best Buy Enterprise Services, Inc.*


By: /s/ Todd. R. Tucker
       Todd. R. Tucker
       Nicholas J. Gingo
       Renner, Otto, Boisselle & Sklar, LLP
       1621 Euclid Ave., 19th Floor
       Cleveland, OH 44115
       Tel:    216.621.1113
       E-mail: ttucker@rennerotto.com
              ngingo@rennerotto.com

       *Attorneys for Onkyo U.S.A. Corporation and Onkyo Corporation*

By: /s/ Gregory D. Miller
       Gregory D. Miller
       Sarah Christine Hodge
       Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman PC
       The Legal Center
       One Riverfront Plaza
       Newark, NJ 07102-5497
       Tel:    973.623.1000
       E-mail: gmiller@podvey.com
              shodge@podvey.com

       Richard A. Edlin
       Greenberg Traurig, LLP
       200 Park Avenue
       New York, New York 10166
       Tel:    212.801.6528
       Fax:   212.801.5528
       E-mail: edlinr@gtlaw.com

        Richard D. Harris (*pro hac vice*)
        Howard E. Silverman (*pro hac vice*)
        James J. Lukas, Jr. (*pro hac vice*)
        Eric J. Maiers (*pro hac vice*)
        Greenberg Traurig, LLP
        77 West Wacker Drive, Suite 3100
        Chicago, Illinois 60601
        Tel:    312.456.8400
        Fax:   312.456.8435
        E-mail: harrisr@gtlaw.com
                silvermanh@gtlaw.com
                lukasj@gtlaw.com
                maierse@gtlaw.com

*Attorneys for Defendants*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

By: /s/ Ronald Yin
        Ronald Yin
        Aaron Wainscoat
        DLA PIPER LLP (US)
        2000 University Avenue
        East Palo Alto, California 94303
        Tel:    650.833.2000
        Fax:   650.833.2001
        E-mail: ronald.yin@dlapiper.com
                aaron.wainscoat@dlapiper.com

*Attorneys for Defendants*
*Toshiba Corporation and Toshiba America*
*Consumer Products, LLC*

By: /s/ Steven Lieberman
    Steven Lieberman
    Brian Rosenbloom
    Joo Mee Kim
    ROTHWELL, FIGG, ERNST & MANBECK, PC
    1425 K St., N.W., Suite 800
    Washington, D.C. 20005
    Tel:    202.783.6040
    Fax:   202.783.6031
    E-mail: slieberman@rfem.com
          brosenbloom@rfem.com
          jkim@rfem.com

*Attorneys for Defendants*
*LG Electronics U.S.A., Inc. and*
*LG Electronics, Inc.*

By: /s/ Evan Finkel
    Evan Finkel
    Mark Kendrick
    Michael Horikawa
    Pillsbury Winthrop Shaw
     Pittman LLP – Los Angeles
    725 S Figueroa Street, Suite 2800
    Los Angeles, CA 90017-5406
    Tel:    213.488.7307
    Fax:   213.226.4058
    E-mail: evan.finkel@pillsburylaw.com
          mark.kendrick@pillsburylaw.com
          michael.horikawa@pillsburylaw.com

    John A. Fedun
    Pillsbury Winthrop Shaw
     Pittman LLP — New York
    1540 Broadway
    New York, NY  10036-4039
    Tel:    212.858.1923
    Fax:   212.858.1500
    E-mail: john.fedun@pillsburylaw.com

*Attorneys for Defendants*
*JVC Americas Corp. and*
*JVC KENWOOD Corporation*

By: /s/ Nicholas Stevens
Nicholas Stevens
STARR, GERN, DAVISON & RUBIN, PC
105 Eisenhower Parkway
Roseland, NJ 07068-1050
E-mail: nstevens@starrgern.com
Tel.:    973.403.9200

Tim Tingkang Xia
Georgia Bar No. 779609
E-mail: ttx@mmmlaw.com
John P. Fry
Georgia Bar No. 278705
E-mail: jfry@mmmlaw.com
Kelly L. Whitehart
Georgia Bar No. 755447
E-mail: klw@mmmlaw.com
MORRIS MANNING & MARTIN LLP
3433 Peachtree Road, N.E.
Atlanta, GA  30326
Tel:    404.233.7000
Fax:   404.365.9523

*Attorneys for Defendant Desay A&V Science and Technology Co. Ltd.*